[Civ. No. 18541.   Second Dist., Div. Three.   June 27, 1952.]

LOS ANGELES CITY SCHOOL DISTRICT OF LOS ANGELES COUNTY et al., Respondents, v. ROY E. SIMPSON, as State Superintendent of Public Instruction, et al., Appellants.

Edmund G. Brown, Attorney General, T. A. Westphal, Jr., and Bayard Rhone, Deputy Attorneys General, for Appellants.

Harold W. Kennedy, County Counsel, George Wakefield, and John B. Anson, Deputy County Counsel, for Respondents.

WOOD (Parker), J.—In this mandamus proceeding, the Superintendent of Public Instruction and the Controller of California appeal from a judgment directing them to apportion and pay to petitioners, Los Angeles City School District and Los Angeles City High School District, the sum of $211,789.91 under the provisions of *article 2*, chapter 15, division 3, of the Education Code, as additional apportionment for the cost of pupil transportation.

The school districts, which are governed by a single governing board and have a single transportation system for the transportation of pupils, filed with the superintendent their report of costs for the fiscal year 1949-1950 and claimed therein state aid for the excess cost of transporting physically handicapped pupils during that year. That claim for $211,-789.91 was made under the provisions of article 2, chapter 15, division 3, of the Education Code, (§ 7016) and was disallowed by the superintendent.

The question is whether the cost of transporting physically handicapped pupils, during the fiscal year 1949-1950, is reimbursable under *article 2*, chapter 15, division 3, (§ 7016) of the Education Code, which article was enacted in 1950.

If the provisions of said article 2, relating to computation and allowance of cost for the *transportation of pupils*, are to be construed to include the excess cost of transporting physically handicapped pupils (that is, cost in addition to the cost of transporting normal pupils), the petitioners are entitled to reimbursement of said sum of $211,789.91.

Appellants (superintendent and controller) contend that such cost is reimbursable only under article 11, chapter 15, division 3, (§ 7101) of said code.

Petitioners (school districts) contend that such cost is reimbursable under article 2 of said chapter. They also assert that they may, at their option, seek reimbursement for the excess cost of transporting physically handicapped pupils either under article 2 or article 11 of said chapter.

Article 11, of said chapter 15, pertains to allowances by the state for excess cost "of educating physically handicapped pupils and mentally retarded minors." Section 7101 of article 11 (as amended in 1949) is as follows: "The Superintendent of Public Instruction shall allow to each school district an amount equal to the *excess cost to such district of educating physically handicapped minor pupils but not*

*in excess of four hundred dollars ($400) for each unit* of average daily attendance of physically handicapped minor pupils in the district during the next preceding fiscal year.'' (Emphasis added.) It is to be noted that said section 7101 does not mention the cost for transporting physically handicapped pupils, but it does state that the excess cost of educating such pupils shall be allowed to the extent of $400 per unit of average daily attendance.

Excess cost is defined in section 9617 of the Education Code, which section is as follows: ''The Superintendent of Public Instruction shall determine the amount of the excess cost incurred by each school district for the education of physically handicapped pupils. 'Excess cost' as employed in this section includes the total current expenditures incurred for remedial classes and for individual instruction of physically handicapped children, plus the excess amount of the current expenditures made for all other physically handicapped pupils instructed in special schools, in special classes, or in regular classes over the amount expended for current expenditures for an equal number of units of average daily attendance of pupils not classified as physically handicapped pupils. 'Remedial classes' as herein employed includes special classes providing remedial instruction for physically handicapped pupils who are excused in small numbers for a portion of a class period from regular classes, without appreciable reduction in the costs of the regular classes.'' It is to be noted that said section 9617 does not refer to transportation cost in referring to excess cost.

Since 1929 school districts have been required to transport physically handicapped pupils. For many years the state has made provision for reimbursing school districts to a limited extent for excess cost (in excess of cost for normal pupils) for educating physically handicapped pupils in elementary and high schools. From 1933 to 1947 the limit for such excess cost was $200 per unit of average daily attendance. In 1947 the limit was increased to $400 per unit. During the many years since the state began to furnish aid for *educating physically handicapped pupils,* until the enactment of said article 2 in 1950, it appears that the superintendent and the school districts of the state, including the two petitioner districts herein, have considered that the excess costs of transporting physically handicapped pupils were to be included in determining the excess costs of educating physically handicapped pupils. (Since the enactment of said article 2, it appears

that only the petitioners herein assert that such cost is reimbursable under article 2.) During many years the state has apportioned to the school districts, and the districts (including petitioners) have accepted, state aid for such transportation cost on the basis that transportation cost was included in educating physically handicapped pupils.

In 1950 article 2, chapter 15, division 3, of the Education Code, was enacted (Stats. 1950, 1st Ex. Sess., ch. 74). Prior to that enactment another article 2, chapter 15, division 3, of said code was repealed. Section 7016 of said article 2, enacted in 1950, provides in part as follows:

"He [Superintendent of Public Instruction] shall compute for each group of two or more school districts which have been continuously from a time prior to July 1, 1949 governed by boards of identical personnel during the preceding fiscal year and have maintained a single transportation system for all of such districts which provided for the transportation of *pupils,* an amount which shall be computed as follows:

"He shall determine the *total current expenses of the districts for such transportation* during the preceding fiscal year, as approved by him, in accordance with such regulations as he shall establish. He shall, . . . then determine what rate of tax levied on each one hundred dollars ($100) of 90 per cent of the assessed valuation of the district as shown by the equalized assessment roll of the district for the preceding fiscal year, hereinafter referred to in this section as computed tax rate, would, if levied, produce such amount. If the computed rate of tax is more than three cents ($0.03) he shall allow to the district (a) 50 per cent of the amount which would be produced by not more than twelve cents ($0.12) of the computed tax rate less three cents ($0.03) and (b) 100 per cent of the amount which would be produced by the computed tax rate in excess of twelve cents ($0.12). . . .

"He shall then allow to each district in the group the same ratio of the total amount computed for the group as the governing boards of the districts in the group certify to him is the ratio the amount expended for such transportation in such district during the preceding fiscal year was of the total expenditures of all districts in the group for such transportation during the preceding fiscal year." (Emphasis added.)

It is to be noted that said section refers to "the transportation of pupils"—but it does not specify that the transportation of pupils includes the excess cost of transporting physically handicapped pupils.

Since the enactment of said section 7016 (a part of art. 2) the petitioners herein claim that the entire cost of transporting physically handicapped pupils is reimbursable under said section 7016 by reason of the provision for "the transportation of pupils." They now argue in effect that the provision in section 7101 (in art. 11), under which they have heretofore accepted state aid for excess cost of transporting physically handicapped pupils, does not include transportation as a part of "educating" physically handicapped pupils, but that said provision pertains only to excess costs for instruction. It is to be remembered that said section 7101 limits the amount of state aid for excess cost of educating physically handicapped pupils to $400. If petitioners should include all their costs for transporting physically handicapped pupils in a claim for excess costs under said section 7101 for educating such pupils, the total costs would exceed the limit of $400. It would be to their advantage, therefore, if they could obtain payment of the excess cost for transportation under the new section 7016 (in art. 2, enacted in 1950). In their brief they state that they have prepared their apportionment claims on a basis which will accord them the maximum benefit authorized by law. Petitioner Los Angeles City High School District claimed $107,385.57 as excess cost for transporting physically handicapped high school pupils under said section 7101 for the year 1949-1950, and it received that amount under the provisions of that section. The claim herein for $211,789.91 (made by both petitioners) was made under the provisions of said section 7016 of said article 2. It appears that said claim is for transportation of physically handicapped elementary school pupils. It thus appears that petitioners seek to apply the provisions of section 7101 of article 11 to high school costs, and to apply the provisions of section 7016 of article 2 to elementary school costs. The reason for such a distinction between costs for physically handicapped high school pupils and physically handicapped elementary school pupils is not clear. It would seem that if excess cost of transporting physically handicapped high school pupils is proper under said section 7101 as an excess cost of educating them, then it would also be proper to include under said section the excess cost of transporting physically handicapped elementary school pupils.

The act of the governing board of petitioners in seeking and obtaining state aid, under section 7101, for transporting high school pupils indicates that the board considered that the

Legislature intended that such transportation should be included as a part of the cost "of educating" physically handicapped pupils. Also, the acts of petitioners over a period of many years in seeking and obtaining such aid under that section are further indications of such an interpretation by the petitioners of the legislative intent.

In determining the intent of the Legislature with respect to said section 7101, consideration should be given to the interpretation placed thereon by the department of education in carrying out the provisions of the section. ▇ A course of administrative procedure, or an administrative construction of a statute, which has been long continued, will be accorded great respect by the courts and will be upheld if not clearly erroneous. (*Los Angeles County* v. *Superior Court,* 17 Cal.2d 707, 712 [112 P.2d 10].) ▇ As above stated, during many years commencing in 1933, the state has reimbursed the school districts of the state for the excess cost of transporting physically handicapped pupils as a part of the excess cost of educating such pupils. An illustration of such an interpretation by the department of education is shown by a bulletin issued by it in 1939 (Exhibit A, p. 10) which stated in part as follows: ". . . the authorization to provide *educational services* for the physically handicapped should be construed as authorizing the provision of *transportation* when necessary to the education of the physically handicapped." (Emphasis added.) Also the printed form (No. J-141) furnished by the superintendent for use of the school districts in applying for state aid in transportation of pupils contains a general instruction to the effect that the excess cost for transporting physically handicapped pupils "shall be excluded from this report, since reimbursement for this portion of such cost is secured by Form No. J-22, Report of Excess Cost Educating Exceptional Children." It is clear that the administrative department, in acting under the provisions of said section, interpreted the section to mean that excess cost of transportation was included as a part of the excess cost of educating physically handicapped pupils.

Transportation is a necessary cost in the program of educating physically handicapped pupils. A part of the cost of transportation for such pupils is the same amount as the ordinary or usual cost of transportation for a normal pupil, and such ordinary or usual cost of transportation for such handicapped pupils is reimbursable under section 7016. It is shown by the transportation reports in evidence herein

that the cost of transporting such handicapped pupils is far in excess of the ordinary or usual cost of transporting normal pupils. The excess cost of transporting such handicapped pupils is reimbursable under said section 7101 (art. 11). It is clear that under section 7101 there is a limit of $400 for the excess cost of educating physically handicapped pupils. If the contention of petitioner is correct, that is, that all cost for transporting such handicapped pupils is reimbursable under the new statute of 1950 (§ 7016, art. 2), then the provision of section 7101 limiting the excess cost of educating physically handicapped pupils to $400 is meaningless. It is to be noted that in 1951 the Legislature added section 7012 to the Education Code, which section provides that the word "Pupils" as used in said article 2 does not include pupils for whom the superintendent determines excess costs under said section 9617. The pupils so referred to in that section are the physically handicapped. In other words, the action of the Legislature in explaining that the word "Pupils" has a meaning contrary to the contention of petitioners herein is significant in determining the intent of the Legislature in enacting said section 7016 of article 2. The excess cost of transporting physically handicapped pupils is not allowable under said article 2, chapter 15, division 3 (§ 7016) of the Education Code.

The judgment is reversed, and the peremptory writ of mandate is discharged.

Shinn, P. J., and Vallée, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied August 21, 1952. Carter, J., was of the opinion that the petition should be granted.