[Civ. No. 43578. Second Dist., Div. Two. Dec. 4, 1974.]

STEPHEN I. ZETTERBERG et al., Plaintiffs and Appellants, v.
STATE DEPARTMENT OF PUBLIC HEALTH et al.,
Defendants and Respondents.

## COUNSEL

Stephen I. Zetterberg and Charles R. Zetterberg, in pro. per., Zetterberg & Zetterberg and Dennis G. Martin for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, Carl Boronkay, Assistant Attorney General, Edward M. Belasco, John Earl Frazer and Jeffrey C. Freedman, Deputy Attorneys General, for Defendants and Respondents.

## OPINION

**COMPTON, J.**—Plaintiffs alleging themselves to be taxpayers and citizens of the State of California instituted an action for declaratory relief regarding the effect of the Mulford-Carrell Air Resources Act (Health & Saf. Code, § 39000 et seq.) praying for "a declaration that the enactment of the so-called 'Pure Air Laws' of California in 1967 and subsequent years have not preempted to the Air Resources Board or any other official agency or board other than the Public Health defendants the control of smog and pollution resulting from motor vehicles, and further declaring that the defendants, and particularly the Department of Public Health, has continuing discretions and duties in the field of pollution from all sources, including motor vehicle pollution, as it relates to public health, and declaring that the defendants have no right to suspend, or to continue to suspend, the traditional and legally accepted public health activities necessary to eliminate the threat to public health caused by smog and pollution resulting from the use of motor vehicles, and particularly conventional internal combustion engines in motor vehicles, and declaring that the defendants, and each of them, have a duty to resume their public health enforcement activities with respect to motor vehicles powered by internal combustion engines; . . ."

In sum, plaintiffs requested the following: (1) A declaration that defendants have the *authority* to act against air pollution; and (2) A declaration that defendants have a *duty* to act against air pollution.

Joined as defendants were the Department of Health,[1] members of the State Board of Public Health and Governor Ronald Reagan (hereafter referred to as "Health defendants") and the California Air Resources Board ("CARB"). Plaintiffs moved for summary judgment. Health defendants moved for summary judgment, and defendant CARB moved for judgment on the pleadings. The court granted summary judgment in favor of all defendants and determined that the "[S]cope of the powers of the Department of Health is restricted [in the area of air pollution control] to those duties expressly conferred on it, or reserved to it, by the said Mulford-Carrell Air Resources Act." Plaintiffs appeal asking that summary judgment be granted in their favor.

Prior to the passage of the Mulford-Carrell Air Resources Act in 1967, the Department of Health acted in the area of air pollution control pursuant to its general statutory authority to deal with health problems (Health & Saf. Code, § 200 et seq.) and under a specific grant of authority, enacted in 1955, to deal with air pollution (former Health & Saf. Code, § 425, added by Stats. 1955, ch. 1312, § 1, p. 2385; repealed by Stats. 1967, ch. 1545, § 1, p. 3679.[2]

In 1967, the Legislature passed the Mulford-Carrell Air Resources Act (hereafter referred to as the "Act"). The Act established the California Air Resources Board, listed in detail, the powers and duties of the Board (see Health & Saf. Code, §§ 39050-39055; 39060-39062; 39067-39067.2) repealed Health and Safety Code section 425 (replacing it with a new section) and gave a number of the former section 425 powers to the CARB (compare § 425 (fn. 2) with Health & Saf. Code, § 39052, subds. (a), (c) and (d)).

---

[1] During this suit defendant's name was changed from State Department of *Public Health* to State Department of Health (Health & Saf. Code, § 20; Stats. 1971, ch. 1593, § 59, p. 3238).

[2] Section 425. "The State Department of Public Health shall maintain a program of air sanitation, including, but not limited to:

"(a) The conduct of studies to determine the health effects of air pollution;

"(b) The determination of the physiological effects of air pollution upon plant and animal life;

"(c) The determination of factors responsible for air pollution;

"(d) The monitoring of air pollutants;

"(e) The development of administrative means of control of air pollution in emergencies;

"(f) Assistance to local agencies in effectuating all of the subdivisions of this section."

The parties by their motions for summary judgment acknowledge that here there are no triable issues of fact.

The parties differ in their interpretation of the Mulford-Carrell Act and its effect upon the obligation and ability of the Department of Health to combat air pollution. Plaintiffs maintain that the Department retains all powers it possessed before the Act which were not specifically granted by the Act to the CARB. Plaintiffs particularly emphasize the power, pursuant to Health and Safety Code section 205 to "commence and maintain all proper and necessary actions and proceedings . . . to protect and preserve the public health." Health defendants maintain that they have only those powers specifically enumerated in the Act, e.g., making recommendations to CARB regarding ambient air quality standards (Health & Saf. Code, § 39051, subd. (b)), and have no power to use or act under any public health sanctions or other provisions of law.

Thus the trial court was presented with a request for an interpretation of a complex statutory scheme and was asked to make a general declaration regarding the duties of an executive department under such scheme. ■ Our examination of the relief requested as measured against accepted standards for granting declaratory judgments, together with the circumstances under which this dispute arises, compels our conclusion that declaratory relief is inappropriate.

Section 1060 of the Code of Civil Procedure sets out the right to declaratory relief in pertinent part as follows: "Any person interested under a . . . written instrument, . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action . . . for a declaration of his rights and duties in the premises, including a determination of any question of construction or validity arising under such instrument or contract."

Section 1061 of the Code of Civil Procedure provides the court with discretion to refuse to exercise the power "where its declaration or determination is not necessary or proper at the time under all the circumstances."

The standard for the granting of declaratory relief is well established. "[T]he controversy must be of a character which admits of specific and conclusive relief by judgment within the field of judicial determination, as distinguished from an advisory opinion upon a particular or hypothetical state of facts. The judgment must decree, and not suggest, what the parties may or may not do. ■ While ordinances and statutes are

inherently proper subjects of declaratory relief, yet a declaratory judgment may not be rendered in respect to them in disregard of the customary limitations upon the granting of such relief." (*Monahan* v. *Dept. of Water & Power,* 48 Cal.App.2d· 746, 751 [120 P.2d 730]; *Selby Realty Co.* v. *City of San Buenaventura,* 10 Cal.3d 110, 118 [109 Cal. Rptr. 799, 514 P.2d 111]; *West Coast Poultry Co.* v. *Glasner,* 231 Cal.App.2d 747, 753 [42 Cal.Rptr. 297].)

■ Plaintiffs' allegation that they are taxpayers does nothing to establish their standing to seek the relief sought and their complaint fails to set forth any circumstances indicating that as citizens of the state they have any greater or different interest in the subject than any other member of the body politic.

■ The fact that an issue raised in an action for declaratory relief is of broad general interest is not grounds for the courts to grant such relief in the absence of a true justiciable controversy. (*Wilson* v. *Transit Authority,* 199 Cal.App.2d 716 [19 Cal.Rptr. 59]; *California Water & Telephone Co.* v. *County of Los Angeles,* 253 Cal.App.2d 16 [61 Cal. Rptr. 618].)

■ It is the prerogative of the Legislature to prescribe the powers and authority of an executive agency created to deal with a specific public problem such as public health. The manner in which this authority is exercised is a matter of administrative discretion. The wisdom or effectiveness of the exercise of either legislative or administrative discretion is judged essentially by the political process.

In short, the judicial branch of government is not the overseer of the other two. ■ A citizen's mere dissatisfaction with the performance of either the legislative or executive branches, or disagreement with their policies does not constitute a justiciable controversy.

"One who invokes the judicial process does not have 'standing' if he, or those whom he properly represents, does not have a real interest in the ultimate adjudication because the actor has neither suffered nor is about to suffer any injury of sufficient magnitude reasonably to assure that all of the relevant facts and issues will be adequately presented." (*California Water & Telephone Co.* v. *County of Los Angeles, supra,* at p. 23; see also *Jennings* v. *Strathmore Public etc. Dist.,* 102 Cal.App.2d 548 [228 P.2d 838].)

"[T]he mere surmise that some right or claim may be asserted does not confer jurisdiction. . . .

"The plaintiff must establish facts which give rise as a matter of law to an existing or imminent invasion of his rights by the defendant which would result in injury to him." (*Angell* v. *Schram,* 109 F.2d 380, at p. 381; *Aetna Life Insurance Co.* v. *Haworth,* 300 U.S. 227 [81 L.Ed. 617, 57 S.Ct. 461, 108 A.L.R. 1000].)

The broad issue of judicial incursion into areas of legislative and executive function in response to an action filed by a citizen was eloquently discussed by the United States Supreme Court in the consolidated actions of *Massachusetts* v. *Mellon* and *Frothingham* v. *Mellon,* 262 U.S. 447 [67 L.Ed. 1078, 43 S.Ct. 597]. The actions there were instituted to enjoin appropriation and expenditure of federal funds.

The court there stated at page 488: "The functions of government under our system are apportioned. To the legislative department has been committed the duty of making laws; to the executive the duty of executing them; and to the judiciary the duty of interpreting and applying them in cases properly brought before the courts. The general rule is that neither department may invade the province of the other and neither may control, direct or restrain the action of the other. . . . We have no power *per se* to review and annul acts of Congress on the ground that they are unconstitutional. That question may be considered only when the justification for some direct injury suffered or threatened, presenting a justiciable issue, is made to rest upon such an act. Then the power exercised is that of ascertaining and declaring the law applicable to the controversy. . . . The party who invokes the power must be able to show not only that the statute is invalid but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally."

In the case before us the Department of Health has administratively interpreted its statutory powers and has adopted policies for performance of its statutory duties. If that interpretation is erroneous and its policies unwise, the corrective mechanism is legislative clarification or action through the political process. It would violate the doctrine of separation of powers if the courts in such a situation, under the guise of declaratory relief, made pronouncements in a field reserved to legislative or executive discretion.

A difference of opinion as to the interpretation of a statute as between a citizen and a governmental agency does not give rise to a justiciable controversy (26 C.J.S. Declaratory Judgments, § 46; *Wilson* v. *Transit Authority, supra*) and provides no compelling reason for a court to attempt to direct the manner by which the agency shall administer the

law. (Cf. *Auberry Union School Dist.* v. *Rafferty*, 226 Cal.App.2d 599 [38 Cal.Rptr. 223]; *Paraco, Inc.* v. *Dept. of Agriculture*, 118 Cal. App.2d 348 [257 P.2d 981].)

■ "The Declaratory Relief Act does not purport to confer upon courts the authority to control administrative discretion." (*Wilson* v. *Transit Authority, supra*, 199 Cal.App.2d 716, at p. 725; also see *City of Tiburon* v. *Northwestern Pac. R.R. Co.*, 4 Cal.App.3d 160, at p. 183 [84 Cal.Rptr. 469].)

As Mr. Justice Jackson stated in *Public Serv. Comm'n.* v. *Wycoff Co.*, 344 U.S. 237, at p. 243 [97 L.Ed. 291 at pp. 295-296, 73 S.Ct. 236], when discussing the remedy of declaratory relief in a federal setting: "But when all of the axioms have been exhausted and all words of definition have been spent, the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power. While the courts should not be reluctant or niggardly in granting this relief in the cases for which it was designed, they must be alert to avoid imposition upon their jurisdiction through obtaining futile or premature interventions, especially in the field of public law."

"[T]he courts cannot formulate decrees that involve the exercise of indefinable discretion; their decrees can only restrict conduct that can be tested against legal standards." (*Harman* v. *City and County of San Francisco*, 7 Cal.3d 150, 161 [101 Cal.Rptr. 880, 496 P.2d 1248].)

Testing plaintiffs' complaint against the foregoing principles we conclude that plaintiffs fail to establish the existence of any justiciable controversy affecting their rights. Our judicial function is not so elastic as to cover a citizen's desire to alter the course of government merely because he perceives it differently from the agency entrusted with the particular set of tasks embraced in a statute.

The role of the Department of Health in combatting air pollution can only be determined by an examination of the legislative history of the Act and a measuring of the current operation under the statute against the expressed legislative intent. ■ However, a court must have narrow, precise questions to guide its examination, without which it is unable to "decree, and not *suggest*, what the parties may or may not do." (*Monahan* v. *Dept. of Water & Power, supra*, at p. 751.)

Even were we to conclude that the defendants have the authority which plaintiffs contend they do, we could not, with any specificity, structure the parameters of their duty to exercise that authority.

It has been held that when a trial court exercises its discretion in refusing to exercise its power to grant declaratory relief, an appellate court will not set aside such action except in case of a patent abuse of that discretion. (*General of America Ins. Co.* v. *Lilly,* 258 Cal.App.2d 465 [65 Cal.Rptr. 750].)

Here the trial court did not refuse to exercise its powers but instead entertained the action and denied plaintiffs the relief they sought. The better procedure would have been to have refused to exercise the power and dismissed the complaint. In fact, because of the clear absence of a justiciable controversy, it was an abuse of discretion not to do so. However, by affirming the judgment we reach the same result.

Although plaintiffs purport to appeal from the order granting defendants' motion for summary judgment and from the order denying plaintiffs' motion for summary judgment, both of which are nonappealable orders, we treat this as an appeal from the final judgment.

The judgment is affirmed.

Roth, P. J., and Beach, J., concurred.

A petition for a rehearing was denied January 2, 1975, and appellants' petition for a hearing by the Supreme Court was denied January 29, 1975.