[Civ. No. 15094. Third Dist. Feb. 25, 1976.]

KAREN COOK et al., Plaintiffs and Appellants, v.
GLENDON CRAIG, as Director, etc., et al.,
Defendants and Respondents.

774

**COUNSEL**

Amtai Schwartz, Joseph Remcho, William Bennett Turner, Vilma I. Martinez, Sanford Jay Rosen and Anthony G. Amsterdam for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, and Robert L. Mukai, Deputy Attorney General, for Defendants and Respondents.

**OPINION**

PARAS, J.—Plaintiffs appeal from a judgment dismissing their complaint after the court sustained a demurrer without leave to amend.

Plaintiffs seek, (1) pursuant to the Public Records Act (PRA) (Gov. Code, § 6250[1] et seq.) and the due process clause, to be allowed to inspect and make copies of the rules and regulations of the California Highway Patrol (CHP) governing the investigation and disposition of citizens' complaints of police misconduct (first and second causes of action), and (2) to require the CHP to comply with the rule-making provisions of the California Administrative Procedure Act (APA) (§ 11370 et seq.) in promulgating its rules and regulations (third cause of action).

Plaintiffs are three state taxpayers (see Code Civ. Proc., § 526a), Karen Cook, John Palmer, and Paul Weber, and an unincorporated association, the Northern California Police Practices Project (Project).

---

[1]Unless otherwise indicated, section references hereinafter are to the Government Code.

The petition alleges that the Project, through its legal director, a member of the California Bar, is presently undertaking to furnish counsel and advice to plaintiffs Karen Cook, John Palmer and Paul Weber at their respective requests with regard to the relative effectiveness of various remedies which may be available to them for alleged police misconduct. Karen Cook wishes to redress the claimed mistreatment of her sister by a CHP officer and Paul Weber claims his own such mistreatment. John Palmer wishes to know the propriety of the procedures used by the CHP in the investigation of a complaint of personnel misconduct filed by him, and desires to lodge a second complaint regarding the CHP investigation of the first complaint.

The three individuals allege that they are reluctant to file administrative complaints with the CHP because they lack access to information which will enable them to evaluate the potential advantages and disadvantages of pursuing the administrative remedy provided by the CHP; they are unaware, and will remain unaware, of the full extent of any administrative remedy provided; and they are unable to present complaints in a meaningful manner because they cannot tailor them to the procedures and issues which the CHP deems important. Moreover, it is alleged that plaintiffs' counsel is unable to advise or represent them because he lacks access to information which would enable him to render adequate legal advice on the relative effectiveness of an administrative complaint and the effect of such a complaint on subsequent legal or other remedies and interests of the plaintiffs.

The petition then alleges that the Project would participate in the rule-making process of the CHP if the defendants complied with the requirements of the APA; and that the Project had requested and demanded that the commissioner promulgate "all" rules and regulations of the CHP in accordance with the mandatory procedural requirements of the APA, but the commissioner failed to do so. In addition, the petition alleges that the Project had previously requested and demanded copies of "all" CHP rules and regulations to evaluate their status under the APA.

In sustaining the demurrer to this complaint, the trial court ruled that the PRA does not compel disclosure of the CHP's procedure for investigating citizen complaints, because (1) the "internal management investigative procedure" does not relate to the conduct of the public's business and is therefore not a public record within the meaning of subdivision (d) of section 6252; and (2) the procedure is so "intertwined

with the complaints themselves" that it is exempted from disclosure by subdivisions (f) and (k) of section 6254 which exempt records of complaints and investigations, and privileged information. The trial court further stated that disclosure of the procedures was not compelled by due process, relying upon *Hannah* v. *Larche* (1960) 363 U.S. 420 [4 L.Ed.2d 1307, 80 S.Ct. 1502]. Finally, the trial court found the APA inapplicable because the procedures sought "cannot be said to be other than material relating to internal management of the agency," within the exception clause of subdivision (b) of section 11371.

I

MOOTNESS

Plaintiffs' original request for the CHP's rules and procedures regarding citizen complaints of police conduct was made on November 1, 1973. After several additional requests, this action was filed on August 26, 1974. On October 28, 1974, the Attorney General informed plaintiffs' counsel by letter that the Legislature had enacted new section 832.5 of the Penal Code on February 22, 1974, effective January 1, 1975, which provided:

"832.5. Each sheriff's department and each city police department in this state shall establish a procedure to investigate citizens' complaints against the personnel of such departments, and shall make a written description of the procedure available to the public."

The Attorney General's letter then stated: "Although the Department of the California Highway Patrol is not required by new section 832.5 or any other provision of law either to establish a citizen complaint investigation procedure or to make available a written description thereof, the Department is of the belief that section 832.5 expresses a new legislative policy favoring availability of information concerning the manner in which law enforcement agencies handle complaints against their personnel.

"We wish, therefore, to advise you, as a person who has previously expressed interest in the matter, that the Department's citizen complaint investigation procedure will be available to the public from and after January 1, 1975. Copies of the document may be purchased at nominal cost."

Despite this concession, the department continued to oppose *court-ordered* disclosure, and succeeded in obtaining the judgment herein in its favor on December 17, 1974. On January 17, 1975, the Attorney General mailed plaintiffs a copy of the newly disclosed document entitled "Citizen's Complaint Investigation, revised December, 1974."

█ The issues as to the first·and second causes of action are not moot. In the absence of a stipulation from counsel for plaintiffs, defendants cannot by mere assertion show that they have provided all the information sought by plaintiffs. █ "[W]hether a final settlement has been reached is a matter depending on the determination of factual issues to be resolved by a fact finding tribunal." (*Landberg* v. *Landberg* (1972) 24 Cal.App.3d 742, 747 [101 Cal.Rptr. 335].)

█ Moreover, at least one plaintiff seeks to know what procedures were in effect prior to the December 1974 revision, under which his prior complaint was investigated, so the case as to him is not moot. As to future revisions of the procedures, it is apparent that defendant's unilateral decision to disclose its complaint investigation procedures is also unilaterally rescindable. Given the position of defendant that it has no legal obligation to disclose these procedures, and its voluntary disclosure only after litigation was commenced, we cannot say that the dispute will not recur. In such circumstances, especially where, as here, the issue is one affecting the public generally, the courts need not accept mootness. (See, e.g. *Allee* v. *Medrano* (1974) 416 U.S. 802, 810-811 [40 L.Ed.2d 566, 577-578, 94 S.Ct. 2191]; *Gray* v. *Sanders* (1963) 372 U.S. 368, 376 [9 L.Ed.2d 821, 827, 83 S.Ct. 801]; *Dept. of Agriculture* v. *Tide Oil Co.* (1969) 269 Cal.App.2d 145, 150 [74 Cal.Rptr. 799].)

In any case, voluntary disclosure does not resolve plaintiffs' action for "declaratory relief" as to whether the procedures are required to be disclosed under the PRA. █ "[T]he general rule governing mootness becomes subject to the case-recognized qualification that an appeal will not be dismissed where, despite the happening of the subsequent event, there remain material questions for the court's determination. This qualification or exception has been applied to actions for declaratory relief upon the ground that the court must do complete justice once jurisdiction has been assumed . . . and the relief thus granted may encompass future and contingent legal rights." (*Eye Dog Foundation* v. *State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541 [63 Cal.Rptr. 21, 432 P.2d 717].) █ " 'Thus, while it has been said that the declaratory judgment acts necessarily deal with present rights, the

"present right" contemplated is the right to have immediate judicial assurance that advantages will be enjoyed or liabilities escaped in the future.' " (*Id.,* at p. 541, fn. 2; see also *Southern Counties Gas Co.* v. *Ventura Pipeline Constr. Co.* (1971) 19 Cal.App.3d 372 [96 Cal.Rptr. 825].)

## II

### THE CALIFORNIA PUBLIC RECORDS ACT

The PRA begins with a broad statement of intent: "In enacting this chapter, the Legislature, mindful of the right of individuals to privacy, finds and declares that access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state." (§ 6250.)

Like the federal Freedom of Information Act, section 552 et seq. of 5 United States Code, upon which it was modeled (see *Black Panther Party* v. *Kehoe* (1974) 42 Cal.App.3d 645, 652 [117 Cal.Rptr. 106]), the general policy of the PRA favors disclosure. Support for a refusal to disclose information "must be found, if at all, among the specific exceptions to the general policy that are enumerated in the Act." (*State of California* ex rel. *Division of Industrial Safety* v. *Superior Court* (1974) 43 Cal.App.3d 778, 783 [117 Cal.Rptr. 726].) To this end, subdivision (d) of section 6252 states that " '[p]ublic records' includes any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics." The word "writing" is itself defined comprehensively in subdivision (e) of section 6252: "(e) 'Writing' means handwriting, typewriting, printing, photostating, photographing, and every other means of recording upon any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combination thereof, and all papers, maps, magnetic or paper tapes, photographic films and prints, magnetic or punched cards, discs, drums, and other documents."

Defendants claim that nowhere in the PRA is the term "public records" *defined,* and that subdivision (d) of section 6252 is merely a statement of certain inclusions within the term and not its definition. Accordingly defendants urge a narrow meaning to the term, based upon cases interpreting it as used in other statutes. (See *People* v. *Olson* (1965) 232 Cal.App.2d 480, 486 [42 Cal.Rptr. 760]; *Nichols* v. *United States*

(D.Kan. 1971) 325 F.Supp. 130, affd. on other grounds (10th Cir.) 460 F.2d 671, cert. den. (1972) 409 U.S. 966 [34 L.Ed.2d 232, 93 S.Ct. 268].) ■ Without quibbling over whether or not subdivision (d) of section 6252 is a "definition" of the term "public records,"[2] the expression *"any writing containing information relating to the conduct of the public's business* prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics" is sufficiently broad to include the material sought by the plaintiffs. The breadth of the term "public records" is further shown by certain exceptions in section 6254, such as subdivisions (a) exempting "[p]reliminary drafts . . . which are not retained by the public agency in the ordinary course of business, provided that the public interest in withholding such records clearly outweighs the public interest in disclosure;. . ." (g) exempting test questions for examination, and (j) exempting "[l]ibrary and museum materials made or acquired and presented solely for reference or exhibition purposes."

■ We therefore conclude that the scope of the term "public records" as used in subdivision (d) of section 6252 does not depend upon the scope of the term as used elsewhere; defendants' cases interpreting it are thus inapplicable. ■ Defendants' justification for refusing to disclose that which was sought herein must be found, if at all, in the exemptions for particular records set out in section 6254[3], the "islands of privacy upon the broad seas of enforced disclosure." (*Black Panther Party* v. *Kehoe, supra,* 42 Cal.App.3d at p. 653.)

Section 6254 provides in part: "Except as provided in Section 6254.7, nothing in this chapter shall be construed to require disclosure of records that are:

". . . . . . . . . . . . . . . . . .

"(f) Records of *complaints to or investigations conducted by,* or records of intelligence information or security procedures of, the office of the Attorney General and the Department of Justice, and *any state or local police agency,* or any such investigatory or security files compiled by any other state or local agency for correctional, law enforcement or licensing purposes;

". . . . . . . . . . . . . . . . . .

[2]Although the editors of the annotated codes use the heading "Definitions" for section 6252, this has no controlling effect on the interpretation of the statute. (*Southlands Co.* v. *City of San Diego* (1931) 211 Cal. 646 [297 P. 521]; *In re Halcomb* (1942) 21 Cal.2d 126 [130 P.2d 384]; Gov. Code, § 6.)

[3]Defendants make no claim of exemption under the public interest alternative of section 6255.

"(k) Records the disclosure of which is exempted or prohibited pursuant to provisions of federal or state law, including, but not limited to, provisions of the Evidence Code relating to privilege." (Italics added.)

Investigatory files and records of complaints are thus clearly exempt from disclosure under subdivision (f) of section 6254. Defendants argue that "following the presentation of a citizen's complaint to the Department, and upon engagement of the fact-collection process which comprises investigation, the compilation of actual 'records' will have begun . . . ." The contention then is that since plaintiffs assert "an interest in certain investigative procedures not only in the abstract, but as they have been or will be given application upon specific complaints," this renders the procedures so "intertwined with the complaints themselves" as to be exempt from disclosure under subdivision (f) of section 6254.

The fallacy of this argument lies in the fact that a general rule of procedure, by definition, applies to more than one case; and, in and of itself, reveals none of the specific facts to which it has been or will be, applied. Nor does it lose its independent identity by application to a given set of facts. The CHP's procedural regulations for investigating citizen complaints are not themselves "records of complaints" or "investigations" within the meaning of subdivision (f) of section 6254, and hence are not exempt from disclosure thereunder.

The exemption provided in subdivision (k) of section 6254 is not an independent exemption at all; it simply incorporates other exemptions or prohibitions provided by law. Again arguing that the procedures are "intertwined" with the complaints, defendants maintain that subsection (2)[4] of subdivision (b) of section 1040 of the Evidence Code requires

---

[4]Subsection (2) of subdivision (b) of section 1040 of the Evidence Code provides:

"§ 1040. Privilege for official information. (a) As used in this section, 'official information' means information acquired in confidence by a public employee in the course of his duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made.

"(b) A public entity has a privilege to refuse to disclose official information, and to prevent another from disclosing such information, if the privilege is claimed by a person authorized by the public entity to do so and:

". . . . . . . . . . . . . . . . .

"(2) Disclosure of the information is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice; but no privilege may be claimed under this paragraph if any person authorized to do so has consented that the information be disclosed in the proceeding. In determining whether disclosure of the information is against the public interest, the interest of the public entity as a party in the outcome of the proceeding may not be considered."

nondisclosure. Having rejected defendants' claim for exemption under subdivision (f) of section 6254, the same reasoning requires that we also reject essentially the same claim under subdivision (k).

Accordingly, we hold that the CHP is required by the PRA to make available for public inspection and copying its procedural regulations governing the investigation of citizen complaints about the conduct of CHP personnel; and that the demurrer to the first cause of action was erroneously sustained.

## III

### Due Process Of Law

■ In view of our holding that disclosure of these procedures is required by the PRA, we need not reach the due process question raised in the second cause of action. (*People* v. *Barton* (1963) 216 Cal.App.2d 542, 546 [31 Cal.Rptr. 7]; *In re Henry G.* (1972) 28 Cal.App.3d 276 [104 Cal.Rptr. 585].) The second cause of action is moot.

## IV

### The Administrative Procedure Act

In their third cause of action plaintiffs claim that the CHP has failed to follow the requirements of the APA (§§ 11370-11528) in regard to "all departmental rules and regulations." We quote herein the pertinent allegations:

"32. Petitioner Northern California Police Practices Project has requested and demanded that respondent [CHP Commissioner] meet his public duty of promulgating *all rules and regulations* of the California Highway Patrol in accordance with the procedures prescribed by the California Administrative Procedure Act, but respondent has refused to do so. Copies of petitioner's demands are attached, marked Exhibits D and E, and are incorporated herein by reference. Respondents have not replied to these demands.

" . . . . . . . . . . . . . . . . . .

"46. Petitioners are entitled to performance of respondents' public duty to promulgate *all rules and regulations* of the California Highway Patrol in accordance with applicable provisions of the California Administrative Procedure Act." (Italics added.)

Exhibits D and E which are incorporated into the petition consist of letters from plaintiffs to the CHP Commissioner, both of which demand that the CHP "begin immediately the process of promulgating in accordance with the notice and hearing requirements of Government Code § [*sic*] 11423-11425 for filing with the Secretary of State and publication in the California Administrative Code *all rules, regulations, and policies* relating to citizen complaint procedures and *all other present and future Departmental regulations* in conformity with California Vehicle Code § 2402 and the California Administrative Procedure Act." (Italics added.)

In the prayer, the petition asks that the court (in addition to invalidating all CHP rules and regulations violative of the APA) command the CHP "to comply with the requirements of the Administrative Procedure Act in adopting, repealing, or amending the rules and regulations of the California Highway Patrol in all future actions which may be taken."

Thus the petition makes it clear that plaintiffs wish the CHP, without exception,[5] to comply with the APA as to every rule it effectuates, modifies or abandons in the course of performing its functions.

The APA establishes certain "procedural requirements for the adoption, amendment or repeal of administrative regulations." (§ 11420.) These include the giving of notice of proposed action by mail, filing, and publication (§§ 11423-11424), hearing (§ 11425), filing with the Secretary of State and each house of the Legislature (§ 11380), etc. The operative sections of the APA make their provisions applicable to "regulations" generally (e.g. §§ 11380, 11420, 11423, 11426, etc.), but certain provisions make it clear that not *all* regulations are included within the scope of the APA (e.g. §§ 11385, 11421 both refer to regulations *not* required to be filed with the Secretary of State). For a more definitive statement of what regulations the APA does not include, we note section 11420's suggestion that it is applicable "to the exercise of any quasi-legislative power conferred by any statute . . . ." We note also that the word "regulation" as used in the operative sections is defined in section 11371 as "every rule, regulation, order, or standard of general application or the amendment, supplement or revision of any such rule, regulation, order or standard adopted by any state agency to implement, interpret, or

---

[5]The only indication that plaintiffs may concede that certain rules of the CHP need not be subject to the APA is found in their closing brief, in which they state that "there may exist a very limited number of CHP regulations that strictly concern police officer safety and do not affect the public in any way . . . ."

make specific the law enforced or administered by it, or to govern its procedure, *except one which relates only to the internal management of the state agencies.*" (Italics added.)

Without delving minutely into the precise intention of the Legislature as to what rules, regulations, orders, or standards of general application are included in the APA, it suffices for our purposes in this case to observe simply that the APA does not include them all. At the very least, those which relate solely to internal management are excluded. We observe also that the CHP has promulgated certain regulations (under Veh. Code, § 2402) pursuant to the APA (Cal. Admin. Code, tit. 13, § 620 et seq.), but obviously not all of them, assertedly because those not so promulgated are dehors the APA. Presumptively the CHP has acted properly in this regard (see *Los Angeles City School Dist.* v. *Simpson* (1952) 112 Cal.App.2d 70, 75 [245 P.2d 629]; *Mission Pak Co.* v. *State Bd. of Equalization* (1972) 23 Cal.App.3d 120, 126 [100 Cal.Rptr. 69]; 5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 70, p. 3309; 2 Cal.Jur.3d, Administrative Law, §§ 105, 137.)

Under these circumstances, there is no relief available to plaintiffs. Even if there exist certain regulations of the CHP which should have been promulgated pursuant to the APA, we have no way of identifying them. All we could do therefore would be to order the CHP to literally comply with the APA, in the face of the CHP's assertion that it has so complied and continues so to comply. We may just as readily order the CHP to "obey all laws." It is elementary, of course, that such broad orders are not available to plaintiffs or to anyone else. (Cal. Const., art. III, § 3; Civ. Code, § 3423, subd. Fourth & Sixth; 43 C.J.S., Injunctions, §§ 109b, 206b; 27 Cal.Jur.2d, Injunctions, §§ 27, 31; cf. Rest., Torts, § 943.)

Nor is this circumstance altered by plaintiffs' more narrow demand in Exhibits D and E to the petition that the rules and regulations relating to *citizen complaint procedures* be promulgated in accordance with the APA. Again the request is much too broad, for within the category of citizen complaint procedures, regulations can certainly exist which involve only internal management of the CHP. Again therefore, the requested order is inappropriate.

Plaintiffs argue that they have no way of making their demand more specific because they have asked to be informed of *all* the rules and regulations of the CHP which demand has been refused. Such lack of information does indeed present a problem to plaintiffs. They are

entitled to certain information under the PRA, and we have here upheld that right as to the first cause of action. Upon receipt of information, including regulations, pursuant to the PRA (including the use of *in camera* procedures under § 6259), plaintiffs may bring an action under section 11440. Or they may seek other remedies, including mandate, regarding subject matter specific enough to permit the issuance of a definite and enforceable order, if appropriate. Otherwise, the admitted obstacle of lack of information with which to supply the court does not alter the realities of the case or change the applicable law.

The judgment is reversed as to the first cause of action; otherwise it is affirmed. Plaintiffs shall recover costs on appeal.

Puglia, P. J., and Regan, J., concurred.

A petition for a rehearing was denied March 19, 1976, and the opinion was modified to read as printed above.