[No. A079606. First Dist., Div. Two. Feb. 11, 1999.]

REDWOOD COAST WATERSHEDS ALLIANCE, Plaintiff and Respondent, v.
STATE BOARD OF FORESTRY AND FIRE PROTECTION et al., Defendants and Appellants.

**COUNSEL**

Daniel E. Lungren and Bill Lockyer, Attorneys General, Roderick E. Walston, Chief Assistant Attorney General, Charles W. Getz IV, Assistant

Attorney General, and John Davidson, Deputy Attorney General, for Defendants and Appellants.

Law Offices of Sharon E. Duggan, Sharon E. Duggan; Public Interest Lawyers Group, David Williams; and Raymond J. Leonardi for Plaintiff and Respondent.   .

## OPINION

**LAMBDEN, J.**—The State Board of Forestry and Fire Protection (Board) and Department of Forestry and Fire Protection (Department) (collectively, appellants) contend that the trial court abused its discretion in granting declaratory relief pursuant to Code of Civil Procedure section 1060. They argue that the issue of the Board's duty to adopt and enforce regulations was moot. Additionally, they contend the controversy was neither ripe nor justiciable. We uphold the trial court's ruling.

### BACKGROUND

California regulates the harvesting of timber on private lands through the Z'berg-Nejedly Forest Practice Act of 1973 (FPA) (Pub. Resources Code, § 4511 et seq.) and forest practice rules (Cal. Code Regs., tit. 14, § 895 et seq.). (All further unspecified code sections refer to the Public Resources Code.)

The legislative intent in enacting the FPA is set forth in section 4513: "It is the intent of the Legislature to create and maintain an effective and comprehensive system of regulation and use of all timberlands so as to assure that: [¶] (a) Where feasible, the productivity of timberlands is restored, enhanced, and maintained. [¶] (b) The goal of maximum sustained production of high-quality timber products is achieved while giving consideration to values relating to recreation, watershed, wildlife, range and forage, fisheries, . . . and aesthetic enjoyment."

The Department is responsible for the overall management of the timber harvest review process, and issues the permits for timber harvesting on private timberlands in the state. The Board is an agency within the Department (§ 730), and it is the regulatory body authorized by the Legislature to adopt those rules and regulations necessary to achieve the goals and objectives of the FPA (§ 4551).

In February 1991, the then director of the Department advised the Board that "existing rules adopted by the Board of Forestry do not fully meet the

intent of the Act because they do not provide adequate guidance to assure the sustainability of high-quality timber products from lands producing at or near their capacity." On April 2, 1991, the Board responded that "existing rules may fail to address the intent of the Act . . . [and] [t]he Board does acknowledge that the issue of the maintenance of maximum sustained production may not be clearly addressed in the rules."

Redwood Coast Watersheds Alliance (RCWA), a voluntary organization consisting of several watershed associations in Mendocino County, was concerned that the Board was not adopting regulations to ensure maximum sustained production (MSP) of high-quality timber products, as required by section 4513, subdivision (b). It filed its original petition for writ of mandate and complaint for injunctive and declaratory relief in May 1991. It was subsequently amended, and, in its final form, RCWA's complaint set forth 11 causes of action.

The only cause of action remaining and pertinent to this appeal is the sixth cause of action for declaratory relief. This cause of action stated, in pertinent part: "Petitioner seeks a judicial determination and declaration that Respondent Board is in violation of the mandate in the Forest Practices Act to enact a comprehensive system of regulation to assure the continuous growing and harvesting of commercial forest tree species as set forth in provisions of the Forest Practices Act such as Pub. Res. Code § 512, § 4513, § 4561, § 4551, and § 4561.1 because, for example, there are no rules or standards that guarantee maximum sustainable productivity for commercial timberlands, and that there is an immediate need for these standards and rules because of the decreasing forest productivity, soil fertility, wildlife diversity, and other forest related benefits.

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"Unless restrained by this Court, Respondents will continue to make decisions upon timber harvest plans without standards and rules necessary to achieve the goals and policies of the Forest Practice Act as set forth in Pub. Res. Code §§ 4512, 4513, 4561, 4561.1, and 4551."

On October 16, 1992, the Board notified the court that rules had been adopted. The court then vacated the submission of the petition and scheduled a number of status conferences. The court issued a pretrial order and stayed the first seven causes of action pending action by the Office of Administrative Law (OAL). The court stated that if rules were approved by the OAL by July 15, 1993, those causes of action would be dismissed as moot, but if they were not approved by that date, any party could move to lift the stay.

The OAL rejected the rules on July 30, 1993. RCWA responded by requesting the court to lift the stay.

At a status conference held on January 14, 1994, the Board provided the court with regulations it had submitted to the OAL on November 24, 1993; they were approved by the OAL on January 7, 1994, to be effective on March 1, 1994. Subsequently, the court ruled that RCWA's first seven causes of action were moot.

The Board began rewriting the rules submitted to the OAL on November 24, 1993, and decided not to implement the approved rules on March 1, 1994. Implementation was to be delayed until the further amendments were adopted. The court vacated its prior order and judgment and set the matter for hearing to decide the issue of duty. The Board did not object to this action.

On August 2, 1994, the trial court issued its statement of decision, ruling in favor of RCWA on its claim for declaratory relief. The statement of decision provided in part: "From the outset, this litigation seems to have been trapped between ripeness challenges on the one hand, and mootness claims on the other. . . . Because the Board has taken the position that whatever rules it might see fit to adopt, it is under no duty to act at all, petitioner has been urging the court to declare otherwise and to compel the Board to adopt MSP regulations within a fixed time limit.

"All parties—and the court—acknowledge that the content of any rules is a matter left to the discretion of the Board, leading intervenors to assert that petitioner's quest for a declaration of duty presents only an abstract question not susceptible to judicial decision. . . .

"Because of the Board's repeated assurances that the adoption of MSP regulations was imminent, the court stayed its hand on several occasions. Indeed, when the OAL finally approved a sustained yield package in January 7, 1994, the court granted respondents' request to dismiss the first seven causes of action as moot. . . . However, when only days later, before the new rules had become effective, the Board extended their effective date to permit consideration of additional amendments, the court concluded that a decision on the issue should be deferred no longer. In view of the background and the continuing controversy that surrounds this subject, a decision on the issue first tendered in 1991 is still called for.

". . . There can be little doubt that this action presents an issue of concern not only to the parties, but to the public at large. Further, while the case

presents a difficult legal question, it is no longer an abstract one. The issue is whether the FPA imposes a mandatory duty on the Board of Forestry to adopt and enforce regulations limiting the aggregate harvest of timber on private timberlands in relation to the supply of standing timber, and if so, whether the Forest Practice Rules as they existed on May 10, 1991 were sufficient to meet the mandates of the statute. . . .

"

"Thus, despite the uncertainty that has pervaded this issue, the conclusion that is most consistent with the apparent intention of the Legislature, and essential to accomplish the long-term objectives of the statute, is that the FPA must be read to demand of the Board of Forestry that it adopt and enforce regulations which ensure that aggregate timber harvest on private lands do not outstrip growth and lead to an ever-diminishing supply of timber. . . .

"For the reasons stated above, at the conclusion of the action judgment will be entered in favor of petitioner on the sixth cause of action, declaring that the Forest Practice Act imposes a duty on the Board of Forestry to adopt and enforce regulations which, in a manner left to the discretion of the Board, limit the aggregate harvest of timber on private timberlands in relation to the present and anticipated future supply of standing timber. Because the Board has now adopted MSP regulations, no writ of mandate will be issued at this time."

The trial court entered judgment on May 29, 1997, which stated, in pertinent part: "1. The California Forest Practice Act (Public Resources Code section 4511 et seq.) imposes a duty on the respondent State Board of Forestry to adopt and enforce regulations, in a manner left to the discretion of the Board, to limit the aggregate harvest of timber on private timberlands in relation to the present and anticipated future supply of standing timber. [¶] 2. Judgment is entered in favor of the petitioner on the sixth cause of action. Because regulations have been adopted, no writ of mandate shall issue. Petitioner's request for injunctive relief is denied."

Appellants filed a timely notice of appeal.

### DISCUSSION

The trial court ruled that the Board had a duty to adopt and enforce regulations, but appellants contend this issue was moot because MSP regulations had already been adopted by the time of the court's ruling, and the

matter was not a ripe or justiciable controversy (Code Civ. Proc., § 1060) since appellants never disputed that the Board had a discretionary duty. We review the trial court's decision using the abuse of discretion standard (*Allstate Ins. Co.* v. *Fisher* (1973) 31 Cal.App.3d 391, 395 [107 Cal.Rptr. 251]; *Tehachapi-Cummings County Water Dist.* v. *Armstrong* (1975) 49 Cal.App.3d 992, 998 [122 Cal.Rptr. 918]).

■ "The standard for the granting of declaratory relief is well established. '[T]he controversy must be of a character which admits of specific and conclusive relief by judgment within the field of judicial determination, as distinguished from an advisory opinion upon a particular or hypothetical state of facts. The judgment must decree, and not suggest, what the parties may or may not do. While ordinances and statutes are inherently proper subjects of declaratory relief, yet a declaratory judgment may not be rendered in respect to them in disregard of the customary limitations upon the granting of such relief.' [Citations.]" (*Zetterberg* v. *State Dept. of Public Health* (1974) 43 Cal.App.3d 657, 661-662 [118 Cal.Rptr. 100] (*Zetterberg*).)

■ Appellants argue that the court had originally dismissed the action because the MSP rules were scheduled to become final in February 1994. They claim that only "after there occurred a limited administrative delay in the final implementation of the rules did the lower court appear to lose its patience, causing it to set aside its original judgment of dismissal . . . ." Appellants quote *Zetterberg, supra,* 43 Cal.App.3d at page 662, which states: "A citizen's mere dissatisfaction with the performance of either the legislative or executive branches, or disagreement with their policies does not constitute a justiciable controversy." The only issue here, appellants claim, is RCWA's dissatisfaction with the scope and timing of the Board's rulemaking and that, under *Zetterberg*, is not a justiciable controversy.

Further, appellants argue that by the time the court issued its second judgment in this matter, in May 1997, the MSP rules had been in place for almost three years. It is a long established rule that a matter is considered moot if, as a result of changed circumstances, its determination by declaratory relief will no longer significantly affect the legal relations of the parties. (*People* v. *Ray* (1960) 181 Cal.App.2d 64 [5 Cal.Rptr. 113].) The court therefore erred in ruling on a moot issue.

Appellants contend: "Because the basis of the Superior Court's setting aside of its dismissal for mootness was based exclusively on a temporary delay in the final effective implementation of the MSP rules, it seems

reasonable to argue that, when those rules <u>did</u> become final shortly thereafter, the court's dismissal for mootness should have been restored." This ruling prejudiced appellants, they argue, because it permitted RCWA to seek and receive attorney's fees pursuant to Code of Civil Procedure section 1021.5.

RCWA contends that the Department cannot now raise the issue of vacating the judgment, because it never objected to the ruling. (*Doers* v. *Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184-185, fn. 1 [151 Cal.Rptr. 837, 588 P.2d 1261].) Further, the trial court has full power to "amend and control its process and orders so as to make them conform to law and justice." (Code Civ. Proc., § 128, subd. (a)(8).) The trial court vacated its judgment, RCWA argues, because the Board had "effectively rescinded the very rules upon which the trial court had relied as the basis for finding mootness." With regard to reinstating the vacated judgment, RCWA asserts that appellants never asked the trial court do this. Moreover, the court had the power to refuse to reinstate that judgment (Code Civ. Proc., § 128, subd. (a)(8)).

We agree with RCWA: the trial court had the authority to vacate its judgment and, since appellants never requested the trial court to reinstate the vacated judgment, they cannot now complain about the court's failure to act. Therefore the sole issue remaining is whether declaratory relief was proper.

RCWA argues that the Board's continuing failure to embrace its mandatory duty established a justiciable controversy. A controversy over an interpretation of a statute, and the duties that statute imposes, is a proper basis for a declaratory relief claim. (See, e.g., *Venice Town Council, Inc.* v. *City of Los Angeles* (1996) 47 Cal.App.4th 1547 [55 Cal.Rptr.2d 465]; *Alameda County Land Use Assn.* v. *City of Hayward* (1995) 38 Cal.App.4th 1716, 1723 [45 Cal.Rptr.2d 752]; *Cook* v. *Craig* (1976) 55 Cal.App.3d 773 [127 Cal.Rptr. 712]; *Davis* v. *Superior Court* (1985) 169 Cal.App.3d 1054 [215 Cal.Rptr. 721]; *Newland* v. *Kizer* (1989) 209 Cal.App.3d 647 [257 Cal.Rptr. 450]; *Sklar* v. *Franchise Tax Board* (1986) 185 Cal.App.3d 616 [230 Cal.Rptr. 42].) Appellants respond that the cases cited by RCWA are unavailing (see, e.g., *Newland* v. *Kizer, supra,* 209 Cal.App.3d 647; *Cook* v. *Craig, supra,* 55 Cal.App.3d 773). In *Newland* and *Cook,* for example, the department had refused to adopt regulations, while the Board here recognized its duty to enact regulations to achieve the objectives of the FPA.

The Board acknowledged its duty to act, but it has asserted throughout the litigation that it has a discretionary rather than a mandatory or ministerial

duty to act. "Discretionary acts are those wherein there is no hard and fast rule as to the course of conduct that one must or must not take and, if there is a clearly defined rule, such would eliminate discretion. [Citation.]" (*Elder* v. *Anderson* (1962) 205 Cal.App.2d 326, 331 [23 Cal.Rptr. 48].) A duty is ministerial when it is the doing of a thing unqualifiedly required. (*Ham* v. *County of Los Angeles* (1920) 46 Cal.App. 148 [189 P. 462].)

Whether the Board's duty to act under the FPA is mandatory or discretionary is a justiciable issue. The "interpretation of ordinances and statutes are proper matters for declaratory relief." (*Walker* v. *County of Los Angeles* (1961) 55 Cal.2d 626, 637 [12 Cal.Rptr. 671, 361 P.2d 247]; see also *Zetterberg, supra,* 43 Cal.App.3d at p. 661 [declaratory relief appropriate to determine duties of executive department under complex statutory scheme].)

Appellants contend that the trial court did not rule in RCWA's favor, but rather, ruled that the Board has a discretionary duty. The trial court stated: "Thus, despite the uncertainty that has pervaded this issue, the conclusion that is most consistent with the apparent intention of the Legislature, and essential to accomplish the long-term objectives of the statute, is that the FPA must be read *to demand* of the Board of Forestry that it adopt and enforce regulations which ensure that aggregate timber harvest on private lands do not outstrip growth and lead to an ever-diminishing supply of timber. . . ." (Italics added.) The court further explained: "For the reasons stated above, at the conclusion of the action judgment will be entered in favor of petitioner on the sixth cause of action, declaring that the Forest Practice Act imposes a duty on the Board of Forestry to adopt and enforce regulations which, in a manner left to the discretion of the Board, limit the aggregate harvest of timber on private timberlands in relation to the present and anticipated future supply of standing timber."

By using the word "demand," the trial court clearly stated that the Board has a mandatory or ministerial duty to adopt MSP regulations, while it has a discretionary duty to determine the content of the regulations as long as the content is consistent with the objectives of the FPA. The Board does not have a choice whether to adopt such regulations: the FPA unqualifiedly requires it to adopt them. "To the extent that its performance is unqualifiedly required, it is not discretionary, even though the manner of its performance may be discretionary." (*Ham* v. *County of Los Angeles, supra,* 46 Cal.App. at p. 162.)

While MSP regulations are now in place, at the time the court ruled there was no guarantee that the Board would stop amending the regulations and

therefore avoid its duty by continually delaying the effective date of the regulations. Moreover, as RCWA contends, if the delay had continued and the court had not ruled on the issue of duty, RCWA or another party would have been compelled to return to court to have the statute interpreted and to request the court to oversee a timeline regarding the implementation of the regulations. We therefore conclude that the trial court did not abuse its discretion in granting RCWA's claim for declaratory relief.

## DISPOSITION

We affirm the judgment and RCWA is awarded costs on appeal.

Kline, P. J., and Ruvolo, J., concurred.