**John NICHOLS, Plaintiff-Appellant,**

**v.**

**The UNITED STATES of America et al., Defendants-Appellees.**

**No. 71–1238.**

United States Court of Appeals, Tenth Circuit.

May 12, 1972.

M. C. Slough, St. Marys, Kan. (Sam A. Crow and John E. Wilkinson, Topeka, Kan., with him on the brief), for appellant.

Barbara L. Herwig, Dept. of Justice, Washington, D. C. (L. Patrick Gray, II, Asst. Atty. Gen., Robert J. Roth, U. S. Atty., and Walter H. Fleischer, Dept. of Justice, Washington, D. C., with her on the brief), for appellees.

Before LEWIS, Chief Judge, and HOLLOWAY and BARRETT, Circuit Judges.

LEWIS, Chief Judge.

In this action brought under the Freedom of Information Act, 5 U.S.C. § 552, the appellant sought a court order re-

quiring the appellees to produce certain items relating to the assassination of President John F. Kennedy. The appellant is a physician licensed to practice in the State of Kansas and is a professor of pathology at the University of Kansas Medical Center. He wishes to study and examine photographs and X-rays taken at the autopsy of the late president performed at the Bethesda Naval Hospital. He requests permission to examine under his own microscope the histological preparations of the margins of the bullet holes in the skin of the neck of the late president, and study the diagnosis and findings of the Bethesda Hospital radiologist from his study of the X-ray films taken at the autopsy. He also desires to study and submit to "neutron activation analysis" various specified exhibits of the President's Commission on the Assassination of President Kennedy (Warren Commission) including, among other things, the clothing worn by President Kennedy at the time of the assassination, and various bullets and bullet fragments associated with his death.

Prior to filing this action the appellant had requested permission from the U. S. Navy and the Archivist of the United States to study, examine, and perform tests on the items now listed in the complaint.[1] The U. S. Navy re-

1. As listed in the complaint, the items requested from the Archivist are: (1) the 6.5 mm Mannlicher-Carcano rifle, Serial C2766, formerly the property of the late Lee Harvey Oswald, Warren Commission Exhibit CE 139; (2) a live 6.5 mm round of ammunition found in the chamber of Oswald's rifle, CE 141; (3) the coat worn by the late President Kennedy at the time of the assassination, CE 393; (4) the shirt worn by the late President Kennedy at the time of the assassination, CE 394; (5) a 6.5 mm bullet found on the floor at Parkland Memorial Hospital on November 22, 1963, CE 399; (6) three empty 6.5 mm cartridge cases found on the 6th floor of the Texas School Book Depository in Dallas, Texas, CE 543, CE 544 and CE 545; (7) a bullet recovered from the wall of the home of Major General Edwin A. Walker in Dallas, Texas, CE 573; (8) the clip presumably from the Oswald rifle C2766, CE 575; (9) two or three metal fragments from the wrist of Governor Con-

nally, CE 842; (10) metal fragments removed from the brain of the late president at the autopsy, CE 843; (11) a mutilated bullet fired through a cadaver's wrist in an attempt to reproduce Governor Connally's wrist wound, CE 856; and (12) certain X-ray films and gross photographs both black-white and color transparencies, made of the late president at autopsy.

The items requested of the U. S. Navy are (1) a grey-brown rectangular structure measuring approximately 13 x 20 mm observed in photographs of the base of the brain of the late President Kennedy by an expert review panel assembled by the Attorney General in February 1968; (2) the histological preparations of the margins of the bullet holes in the skin of the neck of the president; and (3) the written diagnosis and/or findings made by the Bethesda Hospital radiologist from his study of the X-ray films taken at the autopsy.

sponded by the affidavit of Vice Admiral Davis, Chief of the Bureau of Medicine and Surgery, that the items and information requested by the appellant were no longer in the custody of the U. S. Navy. The National Archivist offered to show plaintiff all available materials concerning the Kennedy assassination subject to its regulations regarding access to Warren Commission Exhibits. It also offered to make photographs for him of three-dimensional exhibits which have been placed in glass cases for preservation, but declined to allow him to handle or submit these exhibits to any laboratory tests.

Having exhausted his administrative remedies, the appellant brought this action. The appellees responded with a motion to dismiss, or in the alternative, for summary judgment. The trial court concluded that there was no material issue of fact in the case and that the case was ripe for disposition. The appellees' motion for summary judgment was granted. The memorandum opinion of the trial court is reported at 325 F. Supp. 130.

The Freedom of Information Act, 5 U.S.C. § 552, enacted in its present form in 1967, provides for free access by the public to records and information in the custody of federal agencies, and provides for nine exceptions to the general rule of free access. Subsection (c) of § 552 makes it clear that *all* records and information in agency possession are accessible to members of the public unless they come within one of the nine exceptions. Most of the items sought to be examined by the appellant were found by the trial court to be not included in the meaning of the word "records" as it is used in 5 U.S.C. § 552. We do not find it necessary to reach that question. All of the items requested from the United States Archivist fall within the third of the nine exceptions to the general rule of disclosure. Subsection (b) (3) states

that the statute "does not apply to matters that are . . . specifically exempted from disclosure by statute. . . ."

■■ All of the items sought from the Archivist by appellant came into custody of the United States Archivist pursuant to two statutes. Most of the Warren Commission exhibits which appellant seeks to examine [2] were acquired under authority of Public Law 89–318 which was passed by Congress on November 2, 1965, 79 Stat. 1185. Public Law 89–318 declares that the national interest requires that the United States acquire certain items of evidence considered by the Warren Commission, and that those items be preserved by the United States. It gives the Attorney General authority to determine which items should be acquired and preserved. It further states that:

> All items acquired by the United States pursuant to section 2 of this Act shall be placed under the jurisdiction of the Administrator of General Services *for preservation* under such rules and regulations as he may prescribe. (Emphasis added.)

The authority given to the Administrator has been delegated to the Archivist. Pursuant to the authority granted by Public Law 89–318 the Archivist has prescribed rules and regulations concerning the viewing, study, and use of the Commission exhibits and which are reasonably designed to secure their preservation. Three-dimensional articles (most of the items sought by appellant) may be viewed by researchers, but may not be handled or tested; they may not be removed from the Archives building except with approval of the Archivist and only by a federal employee; their custody may not be given to any other person for any purpose. These rules and regulations are clearly within the scope of the congressional grant of authority of Public Law 89–318 and are

---

**2.** All of the items in custody of the Archivist except the items of personal clothing worn by the president at his death, and the autopsy X-rays and photographs were acquired pursuant to Public Law 89–318. See footnote 1 *supra*.

reasonably designed to accomplish the purpose intended. We conclude that the items acquired by the United States pursuant to the provisions of Public Law 89–318 fall within the exception of 5 U.S.C. § 552(b) (3).

The remainder of these items requested from the Archivist by appellant came into custody of the U. S. Archives pursuant to 44 U.S.C. §§ 2107, 2108(c), which authorize the Administrator of General Services to accept for deposit papers, documents, and other historical materials of a president of the United States subject to the restrictions imposed by the donors or depositors as to their availability and use. The items of personal clothing worn by the president at the time of the assassination and the photographs and X-ray films taken at the autopsy were placed on deposit with the Administrator of General Services by the executors of the Kennedy estate subject to the terms of a letter of agreement of October 29, 1966, which agreement remains in effect during the lives of the late president's widow, children, parents, brothers and sisters. The agreement places certain definite restrictions on access to the materials[3]

and authorizes the Administrator of General Services to impose such other restrictions on their accessibility as he deems necessary and appropriate. ·

The appellant challenges the authority of the Kennedy estate to donate the materials and place restrictions on them. He claims that the items deposited were property of the United States, were not part of the Kennedy estate, and thus could not be donated by the estate. The trial court concluded that it was not necessary that the depositor of such materials be their "owner." We agree with the trial judge's conclusion. The statute does not require that the depositor of historical materials be the "owner" of those materials. In addition, we reject appellant's argument on the ground that he has no standing to claim that the Kennedy estate had no proprietary interest in the materials. The parties to the letter of agreement were the Administrator of General Services of the United States and the representative of the Kennedy estate. Both parties recognized the proprietary interest of the Kennedy estate in the materials placed on deposit under the agreement. The appellant was not a party to

---

3. Paragraph I(2) (b) of the letter of agreement permits restricted access to Appendix A materials which include the items of personal clothing. Access is permitted to

> Any serious scholar or investigator of matters relating to the death of the late President, for purposes relevant to his study thereof. The Administrator shall have full authority to deny requests for access, or to impose conditions he deems appropriate on access, in order to prevent undignified or sensational reproduction of the Appendix A materials. The Administrator may seek the advice of the Attorney General or any person designated by the Attorney General with respect to the Administrator's responsibilities under this paragraph . . . .

Paragraph II(2) (b) deals with Appendix B materials which consist of the autopsy X-rays and photographs. Access to these items is permitted to

> (b) Any recognized expert in the field of pathology or related areas of science or technology, for serious pur-

poses relevant to the investigation of matters relating to the death of the late President; provided, however, that no access to the Appendix B materials pursuant to this paragraph II (2) (b) shall be authorized until five years after the date of this agreement except with the consent of the Kennedy family representative . . .

For the purposes of this paragraph, the determination of whether such an expert has suitable qualifications and serious purposes shall be made by the Kennedy family representative. No access shall be authorized pursuant to this paragraph II(2) (b) during the lives of the individuals referred to in the second paragraph of this agreement [members of the Kennedy family] for any purpose involving reproduction or publication of the Appendix B materials without the consent of the Kennedy family representative, who shall have full authority to deny requests for access, or to impose conditions he deems appropriate on access, in order to prevent such use of the Appendix B materials.

the agreement, and absent a claim of ownership on the part of appellant, he has no standing to object to the letter of agreement or its terms. We conclude that the letter of agreement of October 29, 1966, is a valid binding agreement and that the restrictions on access and inspection imposed thereby are reasonable.

 With regard to the items requested from the United States Navy, we again note that Vice Admiral George M. Davis, having command jurisdiction over the Bethesda Naval Hospital, has sworn by affidavit that the items requested by appellant are not in the custody of the Navy. This affidavit was left unchallenged in the lower court. After the trial court granted appellees' motion for summary judgment the appellant filed a motion to reopen the case in which he attempts to challenge Admiral Davis' affidavit. The motion to reopen appears to be made pursuant to Rule 60, Fed.R.Civ.P. Rule 60 motions are addressed to the sound discretion of the trial court and its determination will not be disturbed on appeal in absence of a showing of abuse of discretion. Valmont Industries, Inc. v. Enresco, Inc., 10 Cir., 446 F.2d 1193; Winfield Associates, Inc. v. Stonecipher, 10 Cir., 429 F.2d 1087. The appellant's arguments to this court concerning the truth of the statements contained in Admiral Davis' affidavit are insufficient to establish an abuse of discretion by the trial court in refusing to reopen the case.

The appellant urges that there are several genuine issues of material fact and that the trial court therefore erred in granting summary judgment for appellees. While it is true that the relief contemplated by Rule 56 is drastic and should be applied with caution, it is nevertheless the duty of the trial court to grant a motion for summary judgment in an appropriate case. Machinery Center, Inc. v. Anchor National Life Ins. Co., 10 Cir., 434 F.2d 1; Smoot v. Chicago, Rock I., & P. R.R., 10 Cir., 378 F. 2d 879. Where there are no disputed material facts, the case is ripe for disposition by summary judgment. Bumgarner v. Joe Brown Co., 10 Cir., 376 F.2d 749. The appellant's assertion of factual issues in his brief lack any support whatsoever in the record. We can only conclude that there were no material issues of fact before the trial court. The motion for summary judgment was properly granted.

Affirmed.