Robert M. BRANDON, Appellant,

v.

Jack M. ECKARD, Administrator, General Services Administration, et al.

No. 74-1503.

United States Court of Appeals, District of Columbia Circuit.

Argued March 4, 1975.

Decided Dec. 22, 1977.

Larry P. Ellsworth, Washington, D. C., with whom Alan B. Morrison, Washington, D. C., was on the brief, for appellant.

John K. Villa, Atty., Dept. of Justice, Washington, D. C., at the time the appeal was argued, of the bar of the Supreme Court of Michigan, *pro hac vice*, by special leave of court, with whom Carla A. Hills,

Asst. Atty. Gen., Washington, D. C., at the time the brief was filed, Earl J. Silbert, U. S. Atty., and Leonard Schaitman, Atty., Dept. of Justice, Washington, D. C., were on the brief, for appellees. Stephen F. Eilperin, Atty., Dept. of Justice, Washington, D. C., at the time the brief was filed, also entered an appearance for appellees.

Before WRIGHT, TAMM, and WILKEY, Circuit Judges.[*]

Opinion for the court filed by J. SKELLY WRIGHT, Circuit Judge.

J. SKELLY WRIGHT, Circuit Judge:

In this action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1970), appellant Brandon appeals from a District Court order granting summary judgment in favor of appellees, General Services Administration (GSA) and its Administrator. Appellant seeks access to certain materials transferred to GSA by Richard M. Nixon. The materials in question date generally from the period when Mr. Nixon was Vice President of the United States.[1] We find that the grounds relied on by the District Court in summarily denying appellant's claim for access were erroneous, and we remand for further proceedings in which the District Court may consider appellant's claim in light of several significant events that have occurred since the summary judgment order.

---

[*] Senior Circuit Judge RIVES of the Fifth Circuit, sitting by designation pursuant to 28 U.S.C. § 294(d) (1970), was a member of the panel which heard argument in this case. Circuit Judge TAMM was substituted for Judge Rives following this court's order of July 28, 1977 directing the parties to file additional briefs.

[1]. The materials include 600,000 individual items contained in 1,176 boxes. A schedule attached to a deed from Richard M. Nixon to the United States describes the materials under the following five categories:

  1. General Correspondence as Vice President
  2. Appearance File 1948–1962

## I. BACKGROUND

The materials to which appellant seeks access were transferred from the Executive Office Building to the National Archives Building on March 26 and 27, 1969.[2] An appraiser employed by then President Nixon examined them on November 3, 17–20, and December 8, 1969. On April 10, 1970, Edward L. Morgan, Deputy Counsel to the President, informed GSA of the existence of a chattel deed purporting to transfer the materials from Richard Nixon to the United States of America. Shortly thereafter the deed,[3] dated March 27, 1969, was delivered to GSA. The deed was signed by Mr. Morgan, rather than the President,[4] and contained the following language designed to restrict access to the materials:

During such time as the undersigned shall hold the office of President of the United States, no person or persons shall have the right of access to such Materials except the undersigned and those who may be designated in writing by the undersigned, and in the case of any person or persons so designated, such right of access shall be limited to those Materials as shall be described in the instrument by which he, she, it or they shall be designated, and for the purposes specified in such instrument; and, if such instrument shall so provide, the person or persons designated therein shall have the further right to copy such of the Materials as shall be described in such instrument and to take and retain possession of such copies for such purposes as shall be specified in said instrument. The undersigned shall have

---

  3. Correspondence re Invitations 1954–1961
  4. Foreign Trip Files as Vice President
  5. Visit of Khrushchev to United States
See Schedule A Annexed to and Part of Chattel Deed from Richard Milhous Nixon to the United States of America, dated March 27, 1969, JA 27.

[2]. The facts stated in this paragraph are drawn from uncontested portions of the affidavit of James B. Rhoads, Archivist of the United States, March 7, 1974, JA 51–56.

[3]. JA 20–27.

[4]. JA 24.

the right and power at any time during his lifetime to modify or remove this restriction as to any or all of the Materials and/or to grant access to any group or groups of persons by notification in writing to the General Services Administration or other appropriate agency of The United States of America.[5]

No representative of GSA signed the deed, but after the commencement of this suit the Archivist of the United States, in an affidavit dated March 9, 1974, claimed that he had accepted the materials as a gift to the United States "notwithstanding the absence of a formal instrument of acceptance" and had also accepted the restrictions on access "in accordance with the applicable provisions of the Presidential Libraries Act of 1955 (44 U.S.C. §§ 2107 and 2108(c) (1970))." [6]

Appellant first sought access to the materials in a letter received by GSA on October 9, 1973.[7] When his request was denied, he exhausted his administrative remedies. In

its final denial of access under FOIA [8] GSA claimed that the materials were not "records" under FOIA and that, even if they were "records," they came within the third exemption to FOIA, 5 U.S.C. § 552(b)(3) (1970), because they were "specifically exempted from disclosure by statute"—namely by certain provisions of the Presidential Libraries Act of 1955, 44 U.S.C. §§ 2107 and 2108(c) (1970). These provisions empower the Administrator of GSA to accept for deposit the papers and other historical materials of a President, former President, or other official or former official of the Government, "subject to restrictions as to their availability and use stated in writing by the donors or depositors * * *." [9]

After receiving no reply to a letter to President Nixon requesting a waiver of the restrictions on access,[10] appellant filed this suit, alleging that the materials were "identifiable records" within the scope of FOIA and that they were not specifically exempted from disclosure under Exemption 3 be-

---

5. JA 22–23.

6. Affidavit of James B. Rhoads, *supra* note 2, at ¶¶ 10 & 11, JA 54.

7. JA 28.

8. Letter from G. C. Gardner, Jr., Assistant Administrator for Administration, GSA, to Larry P. Ellsworth, Esq., November 19, 1973, JA 37.

9. The full text of these provisions reads:
   § 2107. Material accepted for deposit.
   When the Administrator of General Services considers it to be in the public interest he may accept for deposit—
   (1) the papers and other historical materials of a President or former President of the United States, or other official or former official of the Government, and other papers relating to and contemporary with a President or former President of the United States, subject to restrictions agreeable to the Administrator as to their use; and
   (2) documents, including motion-picture films, still pictures, and sound recordings, from private sources that are appropriate for preservation by the Government as evidence of its organization, functions, policies, decisions, procedures, and transactions.
   44 U.S.C. § 2107 (1970).
   § 2108. Presidential archival depository
   * * * * * *
   (c) When the Administrator considers it to be in the public interest, he may exercise,

with respect to papers, documents, or other historical materials deposited under this section, or otherwise, in a Presidential archival depository, all the functions and responsibilities otherwise vested in him pertaining to Federal records or other documentary materials in his custody or under his control. The Administrator, in negotiating for the deposit of Presidential historical materials, shall take steps to secure to the Government, as far as possible, the right to have continuous and permanent possession of the materials. Papers, documents, or other historical materials accepted and deposited under section 2107 of this title and this section are subject to restrictions as to their availability and use stated in writing by the donors or depositors, including the restriction that they shall be kept in a Presidential archival depository. The restrictions shall be respected for the period stated, or until revoked or terminated by the donors or depositors or by persons legally qualified to act on their behalf. Subject to the restrictions, the Administrator may dispose by sale, exchange, or otherwise, of papers, documents, or other materials which the Archivist determines to have no permanent value or historical interest or to be surplus to the needs of a Presidential archival depository.
   44 U.S.C.A. § 2108(c) (1977 Pocket Part).

10. *See* JA 38–39.

cause Mr. Nixon did not own the materials and because even if he did the procedures outlined by 44 U.S.C. §§ 2107 and 2108(c) for establishing restrictions on access had not been followed.[11] As a first step in discovery appellant scheduled the deposition of Edward Morgan, the only person whose signature appears on the controversial deed. On motion of appellees, however, the District Court stayed the taking of this deposition pending disposition of appellees' motion for summary judgment. JA 46. On April 3, 1974 the District Court granted summary judgment for appellees in a one-page order[12] citing *Nichols v. United States,* 325 F.Supp. 130 (D.Kan. 1971), *aff'd,* 460 F.2d 671 (10th Cir.), *cert. denied,* 409 U.S. 966, 93 S.Ct. 268, 34 L.Ed.2d 232 (1972), and *EPA v. Mink,* 410 U.S. 73, 95 n.*, 93 S.Ct. 827, 35 L.Ed.2d 119 (1972) (Stewart, J., concurring). In response to appellant's motion for reconsideration or clarification, the court issued a four-page memorandum opinion indicating the grounds for its decision in more detail. JA 70–73. Brandon then appealed to this court.

Our consideration of this case seeking access to materials associated with Mr. Nixon's vice presidency has been delayed by legislation and litigation concerning materials associated with the Nixon presidency. On September 7, 1974 the Administrator of

GSA signed an agreement with Mr. Nixon, analogous to the deed in this case, providing for deposit of the Nixon presidential materials with GSA, but retaining "legal and equitable title" in Mr. Nixon and arranging for destruction of some of the materials.[13] Almost immediately several suits challenging the validity of the agreement and seeking access to the materials under FOIA were brought in the United States District Court for the District of Columbia.[14] Those suits raised many issues identical to the ones raised in appellant Brandon's suit.

In December 1974, while these suits were pending, Congress took action to protect the presidential materials and the investigations of the Watergate Special Prosecutor by enacting the Presidential Recordings and Materials Preservation Act, Pub.L.No.93–526, 88 Stat. 1695. Title I of the Act established a procedure for disposition of documents and materials related to the Nixon presidency. Mr. Nixon brought a suit challenging the constitutionality of the Act, and his suit was consolidated with the previously filed FOIA suits, but the constitutional challenge was given expedited attention pursuant to the provisions of the Act. *See Nixon v. Administrator of General Services,* 408 F.Supp. 321 (D.D.C. 1976) (three-judge court), *aff'd,* 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977).[15] In light of the com-

11. Complaint for Injunctive Relief Under the Freedom of Information Act, JA 40–43.

12. JA 63.

13. For the text of the agreement *see Nixon v. Sampson,* 389 F.Supp. 107, 160–162 (D.D.C.) (Appendix A), *entry of order stayed, sub nom. Nixon v. Richey,* 168 U.S.App.D.C. 172, 513 F.2d 430 (1975), *dismissed as moot,* 437 F.Supp. 654 (D.D.C. 1977).

14. *See Nixon v. Sampson, supra* note 13.

15. The litigation over the Nixon presidential materials has followed an unusual course through the courts. Judge Richey, the original District Judge in the case, had heard the FOIA claims before Congress passed the Presidential Recordings and Materials Preservation Act, and several weeks after Congress had passed the Act he issued an elaborate opinion on the FOIA claims that covers many of the issues argued in the case now before us. *See Nixon v. Sampson, supra* note 13. This court stayed

entry of an order in accordance with Judge Richey's opinion, however, so that Judge Richey could first determine whether a three-judge court should be convened to consider the constitutionality of the new Act and whether the constitutional challenge should be given priority over any decision of other issues that might prejudice the deliberations of the three-judge court. *See Nixon v. Richey,* 168 U.S. App.D.C. 172, 513 F.2d 430 (1975). A three-judge court was subsequently convened, and it upheld the constitutionality of the Act. *Nixon v. Administrator of General Services,* 408 F.Supp. 321 (D.D.C. 1976). This decision was affirmed by the Supreme Court. *Nixon v. Administrator of General Services,* 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977). The litigation then returned to the District Court for disposition of the FOIA claims. Judge Aubrey Robinson, rejecting requests that he issue an order in accord with Judge Richey's earlier opinion, found the FOIA claims "moot" (at least until regulations governing access under the Act had been issued). *Nixon v. Sampson,*

mon issues involved in appellant Brandon's suit and *Nixon v. Administrator of General Services,* this court ordered *sua sponte* that disposition of Brandon's appeal be deferred pending disposition, including appeals, of the latter case. The Supreme Court issued its opinion in *Nixon v. Administrator of General Services* on June 28, 1977. 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867.[16]

## II. THE DISTRICT COURT'S ORDER

We are unable to affirm the District Court's order granting summary judgment because we find that it was based on erroneous conclusions of law and because subsequent events have so altered the issues involved that further consideration by the District Court is essential. In the brief memorandum issued in response to Brandon's motion for clarification, JA 70–73, the District Court explained that it found it unnecessary to determine whether the materials in question were "records" under FOIA because it concluded that in any case the Presidential Libraries Act of 1955 specifically exempted the materials from disclosure. The court first held that the Presidential Libraries Act qualifies as a statute that specifically exempts matters from disclosure under Exemption 3 of FOIA. It then stated that the materials sought by appellant had been deposited with and accepted by GSA "pursuant to the provisions" of the Act and subject to the restrictions contained in the deed "signed on behalf of Richard M. Nixon by Edward L. Morgan, Deputy Counsel 'authorized to sign such document'." JA 72. Since appellant vehemently contested the propriety of the acceptance of the materials and the restrictions, and since the District Court had blocked the discovery process by which ap-

pellant could substantiate his allegations, these conclusory statements can be explained only in light of two further conclusions by the District Court.

First, following the opinion of the Tenth Circuit in *Nichols v. United States,* 460 F.2d 671, 674–675 (10th Cir.), *cert. denied,* 409 U.S. 966, 93 S.Ct. 268, 34 L.Ed.2d 232 (1972), the District Court held that since appellant was not a party to the alleged agreement between Mr. Nixon and GSA and did not assert a "claim of ownership" in the materials, he had "no standing to object . . . to the agreement or its terms."[17] Second, the court severely limited the scope of its *de novo* review of GSA's claim that the materials were covered by Exemption 3.

*Nichols v. United States, supra,* involved a FOIA suit seeking access to materials associated with the assassination of President Kennedy. In considering an agreement between the Kennedy estate and GSA which restricted access to certain requested materials, the Tenth Circuit, without citing any authority or discussing FOIA's legislative history or purposes, asserted as an alternative holding that one who is not a party to such an agreement and who asserts no "claim of ownership" to the materials involved "has no standing to object * * to the agreement or its terms." 460 F.2d at 674–675. With deference, we reject this attempt to create a novel barrier to FOIA plaintiffs as clearly inconsistent with congressional intent.

█ Congress has provided in FOIA that records shall be made available to "any person," and that anyone denied access may bring suit in federal district court. 5 U.S.C. § 552(a)(3), (4)(B) (Supp. V 1975). FOIA does not discriminate among persons seek-

---

437 F.Supp. 654 (D.D.C.1977). Judge Richey's opinion is therefore without influence as a precedent, but its discussion of the complex issues that are common to the case before us nevertheless provides an historical reference.

**16.** Following the Supreme Court's decision, we requested counsel to submit supplemental briefs discussing the implications of the Court's opinion and of other relevant events that had

occurred since the District Court's order. Our perusal of these supplemental briefs strengthens our conviction that a remand is necessary to give adequate consideration to the impact of changed circumstances. *See* text and notes at notes 26–29 *infra.*

**17.** JA 73, *quoting Nichols v. United States,* 460 F.2d 671, 674–675 (10th Cir.), *cert. denied,* 409 U.S. 966, 93 S.Ct. 268, 34 L.Ed.2d 232 (1972).

ing access to materials on grounds of their particular interests in the requested information,[18] nor does it require any "claim of ownership" as a prerequisite to suit. Appellant has sought information and has been denied access to it on the ground of an alleged agreement that purports to bring the materials he seeks within one of the nine carefully tailored statutory exemptions to FOIA. To deny him standing to question the validity of the agreement and its conformity to the conditions laid down by the relevant statutory exemption would effectively eliminate his statutory right to challenge GSA's refusal to grant him access to the materials he seeks. No authority or policy supports this result. Appellant's standing to challenge the Nixon-GSA agreement is clear from the language and purpose of FOIA and may not be conditioned on his being a party to the agreement or claiming ownership in the materials.[19]

■ Similarly, the District Court erred in over-restricting the scope of its *de novo* review of GSA's claim that the materials in question were exempt from disclosure under Exemption 3. Citing a footnote in Justice Stewart's concurrence in *EPA v. Mink, supra,* 410 U.S. at 95 n. *, 93 S.Ct. 827, the court claimed that by analogy to cases involving Exemption 1 (materials exempted from disclosure by executive order for national security reasons) "[t]he only matter to be determined *de novo* under Section 552(b)(3) [Exemption 3] is whether there exists in fact a statute that specifically exempts the documents and materials in question from disclosure." JA 73. Although this language by itself is ambiguous as to the scope of review,[20] the District Court apparently assumed that the affidavit from the Archivist of the United States stating that the materials and restrictions in question had been accepted pursuant to the Presidential Libraries Act totally disposed of this case. The court evidently felt that once the affidavit was filed it had no obligation to consider appellant's claims that the procedures outlined in the Act had not been followed and that the Act was intended to apply only to personal papers and not to official records. This kind of extreme deference to agency discretion in interpreting exemptions to FOIA, most clearly exemplified by the Supreme Court in the *Mink* case, was specifically disapproved by Congress in 1974 when it amended FOIA to "override" the holding of *Mink*.[21] This congressional action reinforc-

---

**18.** *See, e. g., Soucie v. David,* 145 U.S.App.D.C. 144, 154, 448 F.2d 1067, 1077 (1971) ("By directing disclosure to any person, the Act precludes consideration of the interests of the party seeking relief."); Davis, *The Information Act: A Preliminary Analysis,* 34 U.Chi.L.Rev. 761, 765 (1967).

**19.** *See Nixon v. Sampson, supra* note 13, 389 F.Supp. at 120–123.

**20.** For example, the language suggests that a court could at least review whether the "documents and materials in question" were of the kind specifically exempted by the statute.

**21.** S.Rep. No. 1200, 93d Cong., 2d Sess. 11–12 (1974), *reprinted in* [1974] U.S.Code Cong. & Admin.News 6290. At the time *Mink* was decided Exemption 1 exempted from the Act matters "specifically required by Executive order to be kept secret in the interest of national defense or foreign policy." 5 U.S.C. § 552(b)(1) (1970). The Supreme Court held that under this language federal courts were precluded from *in camera* inspection and thus from *de novo* review of the propriety of classifications

under Exemption 1. The 1974 amendments to FOIA changed both the language of Exemption 1 and other language concerning *de novo* court review to reflect congressional dissatisfaction with the holding in *Mink.* Exemption 1 now covers matters that are "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and * * * are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1) (Supp. V 1975). Furthermore, new language in § 552(a)(4)(B) provides that in cases brought by persons denied access under alleged exemptions "the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B) (Supp. V 1975). This language was intended to make clear "that in determining *de novo* whether agency records have been properly withheld, the court may examine records *in camera* in making its determination

es our conclusion that the District Court improperly restricted its scope of review in this case. A conclusory affidavit stating that material sought under FOIA is exempted from disclosure by a statute that qualifies under Exemption 3 does not entitle a court to ignore claims that the exempting statute does not apply because of the nature of the materials or the failure to follow proper procedures.[22]

Thus the District Court's erroneous conclusions on standing and scope of review led it to cut off discovery and grant summary judgment before a proper record could be developed. Even without adequate discovery, appellant raised serious questions, not addressed by the District Court, about Mr. Nixon's intent to impose restrictions,[23] the procedures followed in establishing the restrictions,[24] and the application of the statutory exemption to the materials involved.[25]

■ Furthermore, not only the litigation over the Nixon presidential materials, but other events since April 1974, have raised new issues of both fact and law. On August 9, 1974 Richard Nixon resigned the office of President. On August 12, 1974 GSA received a letter dated August 8, 1974 purporting to "modify" the restriction on access in the chattel deed by extending the restriction, which had originally applied only during President Nixon's term of office, to January 1, 1985.[26] The Administrator of GSA wrote a letter to Mr. Nixon, dated September 6, 1974, "accepting" the modification, but suggesting that additional modification was advisable to provide access to the materials in the event of Mr. Nixon's death before 1985.[27] These transactions raise new questions concerning the present legitimacy of any restrictions on access.[28]

In addition, critical language in FOIA has been amended twice since the District Court's order. As already mentioned, a 1974 amendment changed the language of Exemption 1 with the intent of overruling *EPA v. Mink,* an opinion on which the court relied in narrowing its scope of review. In 1976 the Government in the Sunshine Act, Pub.L. No. 94–409, 90 Stat. 1241, 1247, explicitly limited the language of Exemption

under any of the nine categories of exemptions under section 552(b) of the law." S.Rep. No. 1200, *supra,* at 9, [1974] U.S.Code Cong. & Admin.News at 6287.

22. Even before the action of Congress in 1974, this court had held that agencies relying on Exemption 1 must demonstrate to the court that the documents in question were "properly classified pursuant to executive order." *Schaffer v. Kissinger,* 164 U.S.App.D.C. 282, 284, 505 F.2d 389, 391 (1974). The 1974 amendments remove any doubt that a reviewing court has the responsibility to consider *de novo* both the substantive and the procedural propriety of actions that allegedly exempt materials from FOIA.

23. For example, appellant pointed out that the restriction, contained in a deed which Mr. Nixon did not sign, was contradicted by statements on an income tax return signed by both Mr. and Mrs. Nixon. *See* Affidavit of Robert M. Brandon, March 25, 1974, Exhibit G, JA 62.

24. The procedural irregularities to which appellant objects include the failure of either Mr. Nixon or any GSA representative to sign the deed, the absence of any formal acceptance of the restrictions by GSA until after initiation of this litigation, and the lack of any preliminary negotiations regarding the transaction. *See* Proffer of Proof, JA 67–68.

25. Appellant contends that the provisions of the Presidential Libraries Act on which appellees rely apply only to personal papers or materials and not to federal records, which are covered by 44 U.S.C. §§ 2103, 2104 (1970). *See* Proffer of Proof, JA 67; reply brief for appellant at 7–19.

26. Affidavit of James B. Rhoads, September 13, 1974, ¶ 1, *reproduced in* Addendum A to appellees' brief at 1a. A copy of the letter is reproduced in Addendum A to appellees' brief at 5a.

27. The GSA letter is reproduced in Addendum A to appellees' brief at 8a. The record does not indicate any further attempts to modify the restriction.

28. The District Court has not had an opportunity to interpret the provisions of the deed governing modification of the restriction on access since Mr. Nixon was still in office when summary judgment was granted. The potential conflicts over the interpretation and the related facts are suggested in the briefs in this case. *Compare* brief for appellees at 31 & n. 15 *with* reply brief for appellant at 26–28.

3, the exemption on which the summary judgment order here was based.[29]

## III. CONCLUSION

We therefore vacate the District Court's order granting summary judgment and, in view of the inadequacy of the record due to premature termination of discovery and the occurrence of significant intervening events, remand for consideration of issues raised before or on remand including, but not limited to, the following:

1. The impact of the Supreme Court's opinion in *Nixon v. Administrator of General Services.*

2. The impact of the 1974 and 1976 amendments to FOIA, *e. g.,* whether the Presidential Libraries Act still qualifies under the new language of Exemption 3.

3. If the Act does still qualify, what kinds of materials does it exempt (personal papers? official records?) and which of the materials sought in this case might properly be exempted under its provisions.

4. What procedural and substantive requirements does the Act establish for accepting materials and restrictions on access and whether those requirements were met in this case (this will require an inquiry into the proper interpretation of the deed and the purported extension of the restriction to 1985).

Its conclusion on these issues may also require the District Court to consider the question it avoided earlier: what parts of the requested materials constitute "identifiable records" under FOIA. The judgment of the District Court is accordingly vacated and this case is remanded to the District Court for further proceedings consistent with this opinion.

*So ordered.*

**29.** Prior to amendment Exemption 3 had covered matters "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3) (1970). It now covers such matters only when "such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C.A. § 552(b)(3) (1977).