**CITIZENS CONCERNED FOR SEPARATION OF CHURCH AND STATE,**
**Plaintiff–Appellee,**

v.

**The CITY AND COUNTY OF DENVER,**
**Defendant–Appellant.**

**No. 79–2303.**

United States Court of Appeals,
Tenth Circuit.

Argued July 9, 1980.
Decided Sept. 4, 1980.

Jonathon B. Chase, American Civil Liberties Union Foundation of Colorado, Inc., Boulder, Colo. (Daniel H. Israel of Dechert, Price & Rhoads, Denver, Colo., with him on brief), for plaintiff–appellee.

Stan M. Sharoff, Asst. City Atty., Denver, Colo. (Max P. Zall, City Atty., Brian H. Goral and Stanley Ereckson, Jr., Asst. City Attys., Denver, Colo., with him on brief), for defendant–appellant.

Marc D. Stern, New York City, filed an amicus curiae brief for American Jewish Congress.

Mark M. Wolfe, Denver, Colo., filed an amicus curiae brief for National Organization for Our American Heritage.

Before BARRETT, DOYLE and McKAY, Circuit Judges.

BARRETT, Circuit Judge.

The City and County of Denver (City) appeals from a judgment entered December 17, 1979, in favor of Citizens Concerned for Separation of Church and State (Citizens) enjoining the inclusion of the Nativity Scene in the Christmas display at the Denver City and County Building, ordering its removal within forty–eight hours, and awarding plaintiff costs and attorney's fees.

### Litigative Background

This action was initiated by complaint filed November 28, 1979, by Citizens, brought by alleged but unnamed Denver residents charging violations of the Establishment Clause of the First and Fourteenth Amendments to the United States Constitution and Article Two, Section Four and Article Nine, Section Seven of the Colorado Constitution. Citizens sought declaratory judgment and preliminary and permanent injunctive relief to prevent the City from "displaying, storing, and appropriating public funds for the nativity scene (creche) in

front of and within the City and County Building. The creche is part of the City and County's Christmas Lighting Program which has been conducted annually for more than eight years, and includes a Santa Claus scene and lighting display." [R., Vol. I, p. 1].

The claim was brought pursuant to 42 U.S.C.A. § 1983. The District Court's jurisdiction was alleged to have vested pursuant to 28 U.S.C.A. § 1343(3).[1]

Under the caption "Parties", Citizens alleged:

### PARTIES

Plaintiff, Citizens Concerned for Separation of Church and State, is an unincorporated association, members of which are residents and taxpayers of the City and County of Denver and the State of Colorado. All have paid taxes which are used, in part, to erect, maintain, display, disassemble and store the creche. [R., Vol. I, p. 2].

The complaint was executed by Jonathon Chase, attorney for plaintiff, FOR: American Civil Liberties Union Foundation of Colorado. [R., Vol. I, p. 4].

Citizens moved for entry of a preliminary injunction on December 6, 1979, pursuant to Fed.Rules Civ.Proc. rule 65(a), 28 U.S.C.A. The matter was thereafter heard on December 12, 1979, prior to the filing of any answer or other response by City. The parties presented witnesses and exhibits. At the conclusion of the evidence and arguments of counsel, the following colloquy occurred, after the presiding judge inquired of counsel for Citizens of the remedy desired and was informed that the requested remedy was the entire removal of the Nativity Scene from the Christmas display:

THE COURT: . . . If this case were to be decided with an additional

---

1. 28 U.S.C.A. § 1343(3) provides that the federal district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person ". . . [t]o redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or

usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

opportunity for hearing or trial would the City put on anything different from what you have already put on?

MR. ERECKSON: We don't believe so, Your Honor.

THE COURT: Essentially, you have presented your case?

MR. ERECKSON: Essentially we have, Your Honor.

THE COURT: You don't feel disadvantaged in your case by doing this in a rush for Motion for Preliminary Injunction?

MR. ERECKSON: I don't believe so, Your Honor.

THE COURT: Well, I guess I can't duck out. I don't have any procedural ground, but I do believe that if I took until Monday to decide the case I wouldn't be guilty of permitting an irrevocable injury to occur between now and then, at least whether I do or don't. I am at least going to take that long to think about it.

So what I will do—take the case under advisement, and we'll resume at two o'clock on Monday. I guess that is the 17th isn't it?

MR. ERECKSON: It is, Your Honor.

THE COURT: At which time I will rule.

MR. CHASE: Your Honor, in light of the defendant's position with respect to whether or not they would wish to put on more, I would move at this time that Rule 65(a)2, that this hearing be consolidated and be considered the trial on the merits.

THE COURT: Is that stipulated and agreed?

MR. ERECKSON: So stipulated.

THE COURT: All right, your motion is granted, and by stipulation it is granted, and the case is now standing submitted on the merits, and I'll have my ruling at two o'clock, Monday afternoon and announce it from the bench.

[R., Vol. II, pp. 155–157].

On December 17, 1979, the Court announced its ruling from the bench. The Court, both orally, and thereafter in its memorandum opinion and order filed that same day, observed that the civil action was brought "by an unincorporated association of residents and taxpayers of the City and County of Denver, Colorado, appearing through the American Civil Liberties Union". [R., Vol. III, pp. 2, 3; Vol. I, p. 14]. The Court reviewed the history of the lighting display at the City and County Building in downtown Denver, maintained for many years during the annual Christmas holiday season, and found: that it involves a spectacle of lights, stars, candles, Christmas cards, an elves' toy shop, Santa Claus, reindeer, flood lights, various tinsel, a cross, and the challenged creche or Nativity Scene; the creche, since the year 1962, has been owned and maintained by City; the creche consists of life–size figurines of Mary, Joseph, the infant Jesus, shepherds, wise men, and domesticated animals, depicting the birth of Christ as described in the writings of St. Matthew, St. John, and St. Luke; the figurines used in the Nativity Scene were purchased by Denver with public funds in 1962; the evidence presented at trial was overwhelmingly supportive of plaintiffs' position that the Nativity Scene is a religious symbol and that by including it in the Christmas display the City and County of Denver violated the Establishment Clause of the First Amendment which is incorporated in the Fourteenth Amendment to the United States Constitution. [R., Vol. I, pp. 14–17]. The Court concluded that even though the designed total effect of the display is to turn the entire front of the City and County Building into a spectacle of light, and when viewed from a distance, the Nativity Scene is almost indiscernible, persons may also walk by the display thus creating an excessive government entanglement with religion proscribed by the First Amendment. *Citizens Concerned, etc. v. City and County of Denver*, 481 F.Supp. 522 (D. Colo. 1979).

Appeal was taken from the District Court's judgment on December 17, 1979. On December 18, 1979, City filed a motion with this Court to stay the enforcement of the District Court's judgment pending ap-

pellate review. That motion was granted on the same day. On December 19, 1979, Citizens filed a "Petition for Rehearing and a Suggestion for Rehearing en Banc" which was denied by this Court on December 28, 1979. On December 31, 1979, Citizens applied to the United States Supreme Court to vacate the stay order granted by this Court. On January 21, 1980, the Supreme Court denied the application.

On appeal, City contends that the District Court's judgment should be reversed in that (1) the plaintiff has failed to prove its standing to litigate and obtain the relief requested, and (2) the Nativity Scene as displayed on the grounds of the City and County Building does not violate the First Amendment to the United States Constitution.

I.

City asks us to dismiss the action (and appeal) because of the failure of plaintiff to prove the requisite standing required under Article III, § 2 of the United States Constitution.

While recognizing that paragraph three (3) of the complaint alleges that plaintiff is an unincorporated association whose members are residents and taxpayers of the City and County of Denver and the State of Colorado who have paid taxes which are used in part to erect, maintain, display, disassemble, and store the creche scene, City argues that, nevertheless, *the record is completely devoid of any evidence to establish the truth of those allegations.* [Brief of appellant, p. 10]. City points out that the record does not evidence the identity of the members of the unincorporated association, whether they are taxpayers, or where they reside. City states that "admittedly, evidence was presented at the time of the hearing on this matter from witnesses that they were residents of the City and County of Denver and State of Colorado. Yet, no evidence was submitted that these witnesses, or anyone else for that matter, were members of the plaintiff association." [Brief of appellant, p. 10].

In response to City's contention that standing has not been established, Citizens points to the allegations contained in paragraph 3 of its complaint, *supra*, and contends that City:

". . . does not argue, as it could not, *see Flast v. Cohen*, 392 U.S. 83 [88 S.Ct. 1942, 20 L.Ed.2d 947] (1960), that taxpayers lack standing to raise claims of Establishment Clause violations. Defendant's position in its Brief, at 10–11, is that because plaintiff did not put on testimony at the trial to establish the truth of those factual allegations, the case must be dismissed for lack of standing. Where defendant's argument fails, however, is in the fact that defendant never denied the allegations of paragraph 3 or otherwise put the question of jurisdiction at issue. Only when the facts claimed as the basis for jurisdiction are challenged must plaintiff prove them. *KVOS, Inc. v. Associated Press*, 299 U.S. 269, 277–78 [57 S.Ct. 197, 200, 81 L.Ed. 183] (1936); *Stern v. Beer*, 200 F.2d 794, 796 (6th Cir. 1952) ("Unless . . . challenged, the jurisdictional question is determined by the allegations."); *see Biggs v. Public Service Coordinated Transport*, 280 F.2d 311, 314 (3d Cir. 1960).

Rule 8(d), Fed.R.Civ.P., states that the effect of a failure to deny facts alleged in the complaint is to admit them. The cases cited above make it clear that such is the case with jurisdictional facts as well. Defendant has never filed an answer in the case and by stipulating to consolidation pursuant to Rule 65(a)(2), Fed.R.Civ.P., waived the right to do so. Allegations in the Complaint not put at issue during the hearing on plaintiff's motion for a preliminary injunction must, therefore, be deemed admitted.

[Brief of Appellee, pp. 11, 12].

In its reply brief, City states that the contention that City's failure to raise the standing issue at the hearing forever bars appellate review of the issue is without merit in that the United States Supreme Court in a series of decisions, citing to *Regents of University of California v. Bakke*, 438 U.S. 265, 280–281 n. 14, 98 S.Ct. 2733,

2743–2744, 57 L.Ed.2d 750 (1978) (Powell, J.); *Juidice v. Vail*, 430 U.S. 327, 331, 97 S.Ct. 1211, 1215, 51 L.Ed.2d 376 (1977); *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 260–262, 97 S.Ct. 555, 560–561, 50 L.Ed.2d 450 (1977), has held that the standing doctrine has evolved as a doctrine of constitutional limitation on the federal judicial power found in the "case or controversy" language of Article III, § 2 of the United States Constitution which, notwithstanding that neither of the parties raised the issue, nevertheless obligates the federal courts to examine the standing of appellees as a matter of the "case or controversy" requirement associated with Article III. [Appellant's Reply Brief, pp. 1, 2]. In further reply, City addresses Citizens' contention that City admitted the jurisdictional allegations contained in paragraph 3 of the complaint because Fed.Rules Civ.Proc. rule 8(d), 28 U.S.C.A. operates as an admission of the standing allegations inasmuch as City did not deny the allegations in a responsive pleading.

City contends that at the date of the hearing, no responsive pleading was required under rule 8(d), *supra*, inasmuch as the summons, issued pursuant to Fed.Rules Civ.Proc. rule 12, 28 U.S.C.A. required the City to answer the complaint within twenty days from service and that, accordingly, an answer was not due until December 27, 1979. City points out that the hearing from which this appeal lies was conducted on December 12, 1979, five days after service was effected and fifteen days before the City's answer was due. [Reply brief of Appellant, pp. 2, 3]. Finally, City argues that Citizens, in an attempt to compensate for its failure to prove its standing, improperly contends that City waived its right to file an answer (and, therefore, admitted the allegations of paragraph 3) by stipulating pursuant to Fed.Rules Civ.Proc. rule 65(a)(2), 28 U.S.C.A. to a consolidation of the preliminary hearing with a hearing on the merits. City states that Citizens' argument misconstrues the legal effect of the waiver because it disregards the express language of the second sentence of rule 8(d), Fed.Rules Civ.Proc., which reads "Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided."

■ We hold that this appeal must be dismissed on the ground that the party plaintiff, appellee here, Citizens, has failed to establish on the record that any constitutionally protected interest of it or its members has been abridged by the challenged display of the Nativity Scene. Insofar as this record is concerned, Citizens is an unincorporated association without articles, by-laws, formal or informal charter, or any identifiable organizational structure, purpose or design. There are no averments relative to membership participation in Citizens or, for that matter, any criteria governing membership. Furthermore, the record does not identify a single person as a member of the named plaintiff, Citizens, and its witnesses at the District Court hearing were not identified either as members of Citizens or as taxpayers of the City and County of Denver and the State of Colorado.

The threshold issue, then, is whether, at the date of the District Court's order, it was vested with jurisdiction. Insofar as the record reflects, jurisdiction was assumed by the District Court.

■ Standing to sue, like mootness and ripeness, ". . . has its constitutional origins in the 'case or controversy' limitation of Article III which insures that courts exercise their power only in cases where true adversary context allows informed judicial resolution." *Wiley v. Nat. Collegiate Athletic Ass'n.*, 612 F.2d 473, 475 (10th Cir. 1979). *See also: Hackbart v. Cincinnati Bengals, Inc.*, 601 F.2d 516 (10th Cir. 1979), *cert. denied*, 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 188 (1980); *Napier v. Gertrude*, 542 F.2d 825 (10th Cir. 1976), *cert. denied* 429 U.S. 1049, 97 S.Ct. 759, 50 L.Ed.2d 765 (1977); *Nichols v. United States*, 460 F.2d 671 (10th Cir. 1972), *cert. denied* 409 U.S. 966, 93 S.Ct. 268, 34 L.Ed.2d 232 (1972); Wright–Miller–Cooper, Federal Practice and Procedure, Vol. 13 and Cum.Supp., § 3531.

■ The question of "standing" to sue has been well stated:

> The question of standing—of whether "a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy" [*Sierra Club v. Morton*, 405 U.S. 727, 731, 92 S.Ct. 1361, 1364, 31 L.Ed.2d 636 (1972)] differs from all of the other elements of justiciability [See §§ 3–90 to 3–16, supra] by focusing primarily "on the *party* seeking to get his complaint before a federal court" and only secondarily "on the *issues* he wishes to have adjudicated." [*Flast v. Cohen*, 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968) (emphasis added).] Standing problems are currently analyzed by the Supreme Court in terms of two inquiries: (a) "whether the [party] alleges that the challenged action has caused him *injury in fact*, economic or otherwise," and (b) "whether the interest sought to be protected by the complainant is *arguably within the zone of interests* [sought] *to be protected or regulated* by the statute or constitutional guarantee in question." [*Association of Data Processing Service Organizations v. Camp*, 397 U.S. 150, 152, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184] (emphasis added).] [Although this precise formulation was shaped to meet a challenge to administrative action on federal statutory grounds, it has become the standard formula in federal *constitutional* challenges to legislative, executive and administrative acts alike. . . . .]

Tribe, *American Constitutional Law*, Standing, § 3–17, pp. 79, 80 (1978). *See also*: Davis, Administrative Law of the Seventies, Supplementing Administrative Law Treatise, *Standing*, §§ 22.02–11 through 22.20 (1976 as supplemented 1980).

The direct "standing" issue presented here is whether, on the state of the record, the named plaintiff lacked standing to seek the relief obtained against the defendant on any ground advanced. Citizens lacked such standing. This is necessarily so because there is no showing of any direct, or even causal connection, between the challenged creche display constituting the alleged First Amendment constitutional violation, and any *injury in fact* to the named plaintiff, Citizens. Furthermore, the action cannot be "saved" by reliance on the "standing" of officers or members of Citizens simply because this record is barren of any identification of a single person qualifying as such. Put another way, the record does not reflect that Citizens qualifies as a litigant entitled to invoke the jurisdiction of a federal district court to decide the merits of a dispute involving alleged violations of the United States Constitution in the Article III "case or controversy" context, *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), or that any facts have been proved conferring standing on its members. In *Broadrick v. Oklahoma*, 413 U.S. 601, 610–611, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830 (1973) the Court observed that ". . . constitutional rights are personal and may not be asserted vicariously. See *McGowan v. Maryland*, 366 U.S. 420, 429–430 [81 S.Ct. 1101, 1106–1107, 6 L.Ed.2d 211] (1961). These principles rest on more than the fussiness of judges. They reflect the conviction that under our constitutional system courts are not roving commissions assigned to pass judgment on the validity of the nation's laws. See *Younger v. Harris*, 401 U.S. 37, 52 [91 S.Ct. 746, 754, 27 L.Ed.2d 669] (1971)."

In *Duke Power Co. v. Carolina Env. Study Group, Inc.*, 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978), the Supreme Court recognized "injury in fact" as the one constant element in judicial statements concerning standing:

> The essence of the standing inquiry is whether the parties seeking to invoke the court's jurisdiction have "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr*, 369 U.S. 186, 204 [82 S.Ct. 691, 703, 7 L.Ed.2d 663] (1962). As refined by subsequent reformulation, this requirement

of a "personal stake" has come to be understood to require not only a "distinct and palpable injury", to the plaintiff, *Warth v. Seldin,* 422 U.S. 490, 501 [95 S.Ct. 2197, 2206, 45 L.Ed.2d 343] (1975), but also a "fairly traceable" causal connection between the claimed injury and the challenged conduct. *Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 261 [, 97 S.Ct. 555, 561, 50 L.Ed.2d 450] (1977).

438 U.S. at p. 72, 98 S.Ct. at p. 2630.

In *Warth v. Seldin, supra,* the Supreme Court required a heavy burden of pleading in order to meet the standing requirements, i. e., that the complainant must clearly allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers.

*Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) involved an action by Sierra Club, a membership corporation with a "special interest in the conservation and sound maintenance of the national parks, game refuges, and forests of the country" for a declaratory judgment and an injunction to restrain federal officials from approving a ski development project in the Sequoia National Forest. The District Court granted the injunction. The Court of Appeals reversed on the ground that the named plaintiff was without standing to litigate the issue. The Supreme Court affirmed. The Supreme Court observed that Congress may not confer jurisdiction on Article III federal courts to render advisory opinions, entertain "friendly" suits, or resolve "political questions". Where, however, a dispute is otherwise justiciable (as in the case at bar) the question of whether the litigant is the proper party to request an adjudication of a particular issue depends upon whether that litigant has established a sufficient stake in the controversy to obtain judicial resolution of the dispute.

The named plaintiff, Sierra Club, alleged that it and its members would be injured by the changes in the aesthetics and ecology of the area. The Court held that such allega-

tions failed to invoke the jurisdiction of the federal courts because the Sierra Club did not allege that it or its members would be affected in any way in their activities or pastimes in the area as a result of the development. The Court observed:

> But the *"injury in fact" test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured.*
>
> \*     \*     \*     \*     \*     \*

The Club apparently regarded any allegations of individualized injury as superfluous, on the theory that this was a "public" action involving questions as to the use of natural resources, and that the Club's longstanding concern with and expertise in such matters was sufficient to give it standing as a "representative of the public".

\*     \*     \*     \*     \*     \*

We noted this development (recognition of injuries other than economic harm) with approval in *Data Processing,* 397 U.S. at 154 [90 S.Ct. at 830], in saying that the interest alleged to have been injured "may reflect 'aesthetic, conservational, and recreational' as well as economic values." *But broadening the categories of injury that may be alleged in support of standing is a different matter from abandoning the requirement that the party seeking review must himself have suffered an injury.* [Emphasis supplied].

405 U.S. at pp. 734, 735, 736, 738, 92 S.Ct. at pp. 1366, 1367, 1368.

Thus, a party must clearly demonstrate by facts alleged that "he himself is adversely affected" or those he represents have been "injured in fact". *Sierra Club v. Morton, supra; Data Processing Service v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

■■ Parties may not by stipulation invoke judicial power of the United States in litigation which does not present an actual case or controversy, *Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978), *Sosna v. Iowa,*

419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), *Richardson v. Ramirez*, 418 U.S. 24, 94 S.Ct. 2655, 41 L.Ed.2d 551 (1974), and jurisdictional questions are of primary consideration and can be raised at any time by courts on their own motion. *McGrath v. Kristensen*, 340 U.S. 162, 71 S.Ct. 224, 95 L.Ed. 173 (1950); *First State Bank, etc. v. Sand Springs State Bank*, 528 F.2d 350 (10th Cir. 1976); *Bledsoe v. Wirtz*, 384 F.2d 767 (10th Cir. 1967).

Citizens has not established standing to sue in its own right. There is no showing that the creche scene in the Christmas display will in anywise impair the functions and activities of Citizens. There is no contention that Citizens will suffer any economic loss or injury—or any other injury—as a result of the alleged First Amendment violation. Citizens has not alleged or proved that it is a person which may be adversely affected by the challenged display. Thus, it has failed to demonstrate a "personal stake" in the outcome of the controversy or, for that matter, that it is an organization deeply interested in the problem. The record is devoid of any demonstrable identification of Citizens in an organizational sense which could bring it within the realm of an "aggrieved person" suffering an invasion of a legal right. In *Sierra Club v. Morton, supra*, this was well articulated:

> The requirement that a party seeking review must allege facts showing that he is himself adversely affected does not insulate executive action from judicial review, nor does it prevent any public interests from being protected through the judicial process. It does serve as at least a rough attempt to put the decision as to whether review will be sought in the hands of those who have a direct stake in the outcome.

405 U.S. at p. 740, 92 S.Ct. at p. 1368.

The record is barren of any identification of a single member (officer or otherwise) of Citizens. Thus, there is no showing that officers or members of Citizens have that necessary "personal stake" required for demonstration of injury in fact. In terms of the "legal wrongs" or "zones of interests" tests relative to standing to sue, there must be some articulable "cause and effect" relation to an identifiable "injury" attributable to a party litigant. A private litigant must, in order to have "standing" to sue, demonstrate a personal stake in the outcome and that he is the proper party to request adjudication of the particular issue. *Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Article III courts cannot issue advisory opinions which cannot affect the rights of the parties in the case before them. *North Carolina v. Rice*, 404 U.S. 244, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971); *Oil Workers Union v. Missouri*, 361 U.S. 363, 80 S.Ct. 391, 4 L.Ed.2d 373 (1960).

One of the most recent Supreme Court pronouncements on the doctrine of standing in the federal courts is *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979). The Court there significantly observed that although standing is a matter dealt with at the earliest stages of litigation, usually on the pleadings, it sometimes remains to be seen whether the factual allegations of the complaint (sufficient if established by adequate proof) will be supported adequately by the evidence adduced at trial. The Court there reviewed important opinions relating to the status of the standing doctrine:

> The constitutional limits on standing eliminate claims in which the plaintiff has failed to make out a case or controversy between himself and the defendant. In order to satisfy Article III, the plaintiff must show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant. . . . Otherwise, the exercise of federal jurisdiction "would be gratuitous and thus inconsistent with the Article III limitation." *Simon v. Eastern Kentucky Welfare Rights Org., supra*, 426 U.S. 26, at 38, 96 S.Ct. 1917, at 1924, 48 L.Ed.2d 450.

Even when a case falls within these constitutional boundaries, a plaintiff may still lack standing under the prudential principles by which the judiciary seeks to

avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to federal courts to those litigants best suited to assert a particular claim. For example, a litigant normally must assert an injury that is peculiar to himself or to a distinct group of which he is a part, rather than one "shared in substantially equal measure by all or a large class of citizens" *Warth v. Seldin, supra* [422 U.S.,] at 499 [95 S.Ct. at 2205]. He also must assert his own legal interests rather than those of third parties. *Ibid. Accord, Arlington Heights v. Metropolitan Housing Development Corp., supra* [429 U.S.] at 263 [97 S.Ct. at 562.]

441 U.S. at pp. 99, 100, 99 S.Ct. at p. 1608.

During the District Court hearing in the instant case, Citizens did not present any evidence, direct or circumstantial, relative to its organizational status, structure, purpose or relationship to or with any person or persons. Witnesses called by Citizens did not testify relative to Citizens or their associational relationship thereto. Furthermore, no witness testified that he or she was a taxpayer of the City and County of Denver of the State of Colorado. To be sure, the witnesses did testify to matters going to the merits of the First Amendment claims.

■ Citizens relies substantially on two legal theories in defense of the standing challenge. First, Citizens contends that paragraph 3 of its complaint contained adequate factual allegations to establish standing. In a pleading sense, we agree. However, we cannot agree with Citizens' argument that because of City's failure to object to Citizens' standing, it (Citizens) was under no obligation to present adequate proof at the District Court hearing supporting the paragraph 3 "standing" allegations. Citizens attempts to avoid this obligation on the basis that City did not deny the allegations in paragraph 3 or "otherwise put the question of jurisdiction at issue". [Brief of Appellee, p. 12]. Thus, Citizens argues that because the facts alleged in paragraph 3 were not challenged by City, they must be taken as true. Citizens relies on Fed.Rules Civ.Proc. rule 8(d), *supra,* for its authority in this regard, pointing out that the rule states that failure to deny facts alleged in the complaint, including jurisdictional facts, constitutes an admission. While recognizing that Citizens has not filed an answer (which was not due at the date of the hearing) Citizens nevertheless argues that by stipulating to consolidate the hearing on the preliminary injunction with the hearing on the permanent injunction pursuant to Fed.Rules Civ.Proc. rule 65(a)(2), *supra,* City waived its right to file an answer.

We have heretofore observed that paragraph 3 complies with the pleading requirements of Fed.Rules Civ.Proc. rule 8, *supra.* Thus, under usual and routine litigative procedure, a defendant, under the theory of Fed.Rules Civ.Proc. rule 8(b) and (d), *supra,* must file a responsive pleading, whether it be an answer or a reply, setting forth his defenses to each claim asserted in the form of admissions or denials. The purpose thus served is that allegations in the complaint not denied will stand admitted and will not be at issue at trial and those allegations denied will require proof to be established by the plaintiff in order that he prevail. Here, the answer of City was not due when the hearing on the injunctive relief sought by Citizens was held. No contention is made that City was required to file an answer or other pleading prior to the hearing. Thus, there was no statutory failure on the part of City to plead. Nor could there be, inasmuch as no responsive pleading was required at the date of the hearing on the petition for grant of a preliminary injunction. The last sentence of rule 8(d), *supra,* explicitly provides: *"Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided."* Thus, in our view, the burden of establishing all jurisdictional facts was squarely that of the petitioner, Citizens, when the District Court hearing was held.

■ The policies reflected in the enactment of the 1966 amendment to rule 65 [subsection (a)(2)] were designed to effi-

ciently expedite final disposition of an injunctive action. This subsection was added to provide that a hearing on a preliminary injunction may be consolidated with one on the merits, so that any evidence introduced at a rule 65(a) hearing (for a preliminary injunction) that would be admissible at trial becomes part of the record and thus need not be repeated upon the trial. The Advisory Committee in its note to the amendment (39 F.R.D. 124, 125) states that the new subdivision "reflect[s] the substance of the best current practice and introduces no novel conception." The statements of the Advisory Committee indicate—and there is no legislative history contra—that rule 65, *supra*, with its amendments and additions was designed solely as a procedural tool to expedite the action and accommodate the court and the litigants. Such consolidation may obviously avoid having the same evidence presented both at the preliminary injunction stage and later at trial at the permanent injunction stage. Thus, such a consolidation generally saves considerable time at trial by eliminating unnecessary evidentiary redundancy. Wright & Miller, Federal Practice and Procedure: Civil § 2950; 42 Am.Jur.2d §§ 286, 287. Of paramount significance here, however, rule 65, *supra, does not* confer either subject matter or personal jurisdiction on the court. Wright & Miller, Federal Practice and Procedure: Civil § 2941. It has been noted that the subject of injunctions in the federal courts has a three–fold aspect: (1) jurisdictional, i. e., power to entertain the action, and control of the subject matter and the parties; (2) propriety of issuing the injunction, sometimes referred to as "equitable jurisdiction", and (3) procedural, i. e., control of the issuance of an injunctive order. Rule 65, *supra*, affects only the third factor in that it determines only the method of seeking and obtaining any sort of an injunction. Accordingly, it has no relationship to or bearing on either the jurisdiction to exercise or the propriety of exercising the injunctive power. 7–Pt. 2 Moore's Federal Practice § 65.03[1]. Thus, rule 65 confers no jurisdiction. 7–Pt. 2 Moore's Federal Practice § 65.03[3].

It is fundamental that mandatory injunctive relief should be granted only under compelling circumstances inasmuch as it is a harsh remedial process not favored by the courts. 42 Am.Jur.2d, Injunctions, §§ 16, 20. It is only available following a final hearing governed by hearings in equity suits generally relating to rules of evidence, reference and the Federal Rules of Civil Procedure. 27 Am.Jur.2d, Equity, §§ 235, 236. Thus, the party seeking the injunction must prove his own case and adduce the requisite proof, by a preponderance of the evidence, of the conditions and circumstances upon which he bases the right to and necessity for injunctive relief. 42 Am.Jur.2d, Injunctions, § 287; 19 A.L.R.3d 502.

We have heretofore observed that in its brief, Citizens invoked *Flast v. Cohen, supra*, for the broad-sweeping rule that taxpayers have standing to raise claims of First Amendment Establishment Clause violations. That the rule in *Flast* is not as "sweeping" as Citizens urges was, in our view, articulated by the Supreme Court in *United States v. Richardson*, 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974), where the Court observed:

Although . . . . *Flast v. Cohen, supra*, is a starting point in an examination of respondent's claim to prosecute this suit as a taxpayer, that case must be read with reference to its principal predecessor, *Frothingham v. Mellon*, 262 U.S. 447 [43 S.Ct. 597, 67 L.Ed. 1078] (1923). In *Frothingham*, the injury alleged was that the congressional enactment challenged as unconstitutional would, if implemented, increase the complainant's future federal income taxes. Denying standing, the *Frothingham* court rested on the "comparatively minute[,] remote, fluctuating and uncertain," *id.*, at 487 [43 S.Ct. at 601], impact on the taxpayer, and the failure to allege the kind of direct injury required for standing.

"The party who invokes the [judicial] power must be able to show not only that the statute is invalid but that he has sustained or is immediately in dan-

ger of sustaining some direct injury as a result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally." *Id.*, at 488 [43 S.Ct. at 601]. . . . While the "impenetrable barrier to suits against Acts of Congress brought by individuals who can assert only the interest of federal taxpayers," *id.*, 392 U.S. at 85 [88 S.Ct. at 1944], had been slightly lowered, the [*Flast v. Cohen*] Court made clear it was reaffirming the principle of *Frothingham* precluding a taxpayer's use of "a federal court as a forum in which to air his generalized grievances about the conduct of government or the allocation of power in the Federal System." *Id.*, 392 U.S. at 106 [88 S.Ct. at 1955].

Although the Court made it very explicit in *Flast* that a "fundamental aspect of standing" is that it focuses primarily on the *party* seeking to get his complaint before the federal court rather than "on the issues he wishes to have adjudicated" . . . [here] . . . While we can hardly dispute that this respondent has a genuine interest in the use of the funds and that his interest may be prompted by his status as a taxpayer, he has not alleged that, as a taxpayer, he is in danger of suffering any particular concrete injury as a result of the operation of this statute. As the Court noted in *Sierra Club v. Morton*, 405 U.S. 727 [92 S.Ct. 1361, 31 L.Ed.2d 636] (1972):

"[A] mere 'interest in a problem', no matter how long–standing the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render the organization 'adversely affected' or 'aggrieved' within the meaning of the APA." *Id.*, at 739, 92 S.Ct. at 1368. [Footnote omitted].

418 U.S. at pp. 171, 172, 173, 174, 177, 94 S.Ct. at pp. 2944–46.

*See also*: Wright, Law of the Federal Courts, 3d Ed., § 13 "Case or Controversy"–Standing to Litigate, pp. 42–52.

In *Penn v. San Juan Hospital, Inc.*, 528 F.2d 1181 (10th Cir. 1975), we recognize that while the object of a preliminary injunction is to preserve the status quo pending the litigation on the merits, it is distinguishable, in terms of proof, in that while (a) it is not necessary that the plaintiff establish to a certainty at a hearing on application for a temporary injunction that he is entitled to relief on the merits, but rather that his success is probable; (b) at a hearing upon consolidation pursuant to rule 65(a)(2), *supra*, for permanent injunction, the plaintiff cannot hold back evidence and must fully develop his case. We there cited to 7 J. Moore, Federal Practice, par. 65.-04(4), pp. 65–66 – 65–67. *See* 528 F.2d at p. 1187. Part and parcel of the full development of the case pursuant to a rule 65(a)(2), *supra*, hearing must necessarily involve proof that the party plaintiff is the real party in interest. *See* Fed.Rules Civ.Proc., rule 17(a), 28 U.S.C.A.; 59 Am.Jur.2d, Parties, § 38. There is a difference between capacity to sue and standing to sue. The former relates to the right to come into court, while the latter relates to the right to relief. *See Friendly Village Community Assoc., Inc., No. IV v. Silva & Hill Construction Co.*, 31 Cal.App.3d 220, 107 Cal. Rptr. 123, 69 A.L.R.3d 1142. In *Boeing Airplane Company v. Perry*, 322 F.2d 589 (10th Cir.1963), *cert. denied*, 375 U.S. 984, 84 S.Ct. 516, 11 L.Ed.2d 472 (1964), we said:

Every civil action in the federal courts must, of course, be prosecuted in the name of the real party in interest. And the "real party in interest" is the one who, under applicable substantive law, has the legal right to bring the suit. See: *Hoeppner Construction Company v. United States*, 10 Cir., 287 F.2d 108. Accordingly, an administrator may bring the suit in his own name without joining the parties for whose benefit it is brought, if by the law of the forum he may do so. See: F.R.Civ.P., Rule 17(a); third sentence, Rule 17(b); Federal Practice and Procedure, Barron & Holtzoff, Ch. 8, § 486; and Moore's Federal Practice, Vol. 3, § 17.18.

322 F.2d at p. 591.

Thus, in light of the absence of any evidence of standing, we are compelled to exercise judicial restraint in declining to speculate on the standing issue. By focusing, as we must, on the *party* seeking relief, we observe that this record on appeal does not contain a scintilla of evidence that the plaintiff (Citizens) is within the zone of interest protected by the First Amendment or has suffered any injury in fact by reason of its violation as invoked in the complaint. *See Natural Res. Def. Coun., Inc. v. United States Env. P. Ag'cy.*, 481 F.2d 116 (10th Cir. 1973).

A federal court must in every case, and at every stage of the proceeding, satisfy itself as to its own jurisdiction, and the court is not bound by the acts or pleadings of the parties. *Treinies v. Sunshine Min. Co.*, 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85 (1939); *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); 12 A.L.R.2d 8, 12; *Burks v. Texas Co.*, 5th Cir., 211 F.2d 443, 47 A.L.R.2d 646. This obligation and duty to be watchful of the question of jurisdiction extends full measure to the federal appellate court which must satisfy itself of its own jurisdiction and that of the district court. *Mitchell v. Maurer*, 293 U.S. 237, 55 S.Ct. 162, 79 L.Ed. 338 (1934); *Minnesota v. Hitchcock*, 185 U.S. 373, 22 S.Ct. 650, 46 L.Ed. 954 (1902). "Although raised by neither of the parties, we are first obligated to examine the standing of appellees, as a matter of the case—or—controversy requirement associated with Art. III, to seek injunctive relief in the District Court. *North Carolina v. Rice*, 404 U.S. 244 [92 S.Ct. 402, 30 L.Ed.2d 413] (1971); *O'Shea v. Littleton*, 414 U.S. 488, 493–498 [94 S.Ct. 669, 674–677, 38 L.Ed.2d 674] (1974)." *Juidice v. Vail*, *supra*, 430 U.S. at p. 331, 97 S.Ct. at p. 1215.

## II.

In light of our holding that we are without jurisdiction over this cause on appeal, we cannot reach the merits of the dispute involving the alleged violation of the Establishment Clause of the First Amendment to the United States Constitution by reason of the Nativity Scene display.

The appeal is dismissed and the cause is remanded to the District Court with instruction to vacate the judgment of December 17, 1979, for want of jurisdiction.